UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

JABBAR COLLINS,                                          :

                               Plaintiff,           :   Index No. CV11-766 (FB)(RML)

                -against-                           :

THE CITY OF NEW YORK,                                    :
MICHAEL F. VECCHIONE, BRIAN MAHER,
STEPHEN BONDOR, SHOLOM TWERSKY,                          :
ANTHONY D'ANGELO, MELANIE MARMER,
MORGAN J. DENNEHY, VIRGINIA C. MODEST,                   :
and JODI MANDEL, as employees of the
Kings County District Attorney's Office and             :
Individually, and VINCENT GERECITANO
and JOSE R. HERNANDEZ, Individually and as              :
Members of the New York City Police Department,
                                                        :
                        Defendants.          :

                                      :
------------------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW OPPOSING
DEFENDANTS' MOTION TO DISMISS UNDER
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

JOEL B. RUDIN, ESQ.
LAW OFFICES OF JOEL B. RUDIN
200 West 57th Street, Suite 900
New York, New York 10019
(212) 752-7600 (Phone)
(212) 980-2968 (Fax)
E-mail:  jbrudin@aol.com

*Attorney for the Plaintiff*

**TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES......................................................................... i

PRELIMINARY STATEMENT................................................................ 1

STATEMENT OF FACTS...................................................................... 1

ARGUMENT

    POINT I

    PLAINTIFF STATES VALID, PLAUSIBLE FEDERAL CLAIMS...................... 4

        A.     Introduction................................................................ 4

        B.     The Causes of Action (Sixth and Seventh) Against
             The Individuals.......................................................... 5

        C.     The *Monell* Claims Involving The NYPD (Eighth) and
             Brooklyn D.A. (Ninth) Are 'Plausible'........................... 6

             1.     The Applicable Law.......................................... 6

             2.     The D.A. Claim.............................................. 10

             3.     The NYPD Claim............................................ 13

    POINT II

    THE STATE LAW CLAIMS ARE LEGALLY SUFFICIENT............................ 14

        A.     First Cause of Action - Malicious Prosecution............................. 14

        B.     Second Cause of Action - Intentional Infliction of
             Emotional Distress ("IIED")........................................... 15

        C.     Third Cause of Action - Abuse of Process..................................... 15

        D.     Fourth Cause of Action - Actual and Constructive Fraud.............. 16

        E.     Tenth Cause of Action - Negligent Hiring, Training,
             And Supervision.......................................................... 17

*Page*

POINT III

THE INDIVIDUAL DEFENDANTS DO NOT ENJOY ABSOLUTE
IMMUNITY UNDER EITHER STATE OR FEDERAL LAW.............................. 18

    A.    The Federal Claims............................................................ 18

            1.    Vecchione's False Statements In 2006............................... 19

            2.    The FOIL Defendants' False Statements Denying
                Possession Of Documents...................................................... 21

            3.    Vecchione's Pretrial Investigative And
                Administrative Misconduct.................................................... 21

                a.    Filing False Reports Regarding
                        Santos and Diaz........................................... 21

                b.    Orchestrating The Revocation Of Oliva's
                        Work Release........................................... 22

                c.    Illegally Imprisoning and Physically
                        Threatening Santos and Oliva................................. 22

                d.    Preparing False Affidavits To Obtain
                        Court Orders........................................... 23

    B.    The State Claims.......................................................... 24

CONCLUSION.......................................................................... 25

# **TABLE OF AUTHORITIES**

*Case*                                                                                          *Page*

*ABN AMRO Bank, N.V. v. MBIA Inc.*, 17 N.Y.3d 208 (2011)................................. 14

*Albright v. Oliver*, 510 U.S. 266 (1994)................................................................ 6n

*Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004)............. 6-7

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009)........................................... 4, 5, 7, 8

*Babi-Ali v. City of New York*, 979 F. Supp. 268 (S.D.N.Y. 1997)........................... 9n

*Beck v. City of Pittsburgh*, 89 F.3d 966 (3d Cir. 1996)............................................ 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................................... 4-5, 7

*Bender v. City of New York*, 78 F.3d 787 (2d Cir. 1996).......................................... 15

*Bd. of Ed. Of Farmingdale Union Free School Dist. v. Farmingdale
    Classroom Teachers Ass'n, Inc.*, 38 N.Y.2d 397 (1975)............................ 16

*Betts v. Richard*, 726 F.2d 79 (2d Cir. 1984)........................................................... 23-24

*Bordanaro v. McLeod*, 871 F.2d 1151 (1st Cir. 1989)............................................. 9

*Broughton v. City of New York*, 91 Misc.2d 543 (Civ. Ct.,
    New York Co. 1977)................................................................................. 25

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993)........................................................ 18, 19

*Burg v. Gosselin*, 591 F.3d 95 (2d Cir. 2010)........................................................ 6n

*Burns v. Reed*, 500 U.S. 478 (1991)....................................................................... 18, 19, 22

*Canton v. Harris*, 489 U.S. 378 (1989)................................................................... 8, 13

*Cash v. County of Erie*, 654 F.3d 324 (2d Cir. 2011).............................................. 7, 9, 9n

*Castilla v. City of New York*, 2011 WL 4345934
    (S.D.N.Y. Aug. 22, 2011)........................................................................ 7n

| *Case* | *Page* |
|---|---|
| *Claude H. v. County of Oneida*, 214 A.D.2d 964 (4th Dept. 1995) | 25 |
| *Connick v. Thompson*, 131 S.Ct. 1350 (2011) | 8, 9, 10, 11, 12 |
| *Cornejo v. Bell*, 592 F.3d 121 (2d Cir. 2010) | 18 |
| *Cruz v. Kauai County*, 279 F.3d 1064 (9th Cir. 2001) | 23, 24n |
| *Cunningham v. State*, 71 A.D.2d 181 (3d Dept. 1979) | 24 |
| *Curiano v. Suozzi*, 63 N.Y.2d 113 (1984) | 15 |
| *Davis v. Lynbrook Police Dep't.*, 224 F. Supp.2d 463 (E.D.N.Y. 2002) | 12 |
| *Della Pietra v. State of New York*, 71 N.Y.2d 792 (1988) | 24 |
| *Disorbo v. Hoy*, 74 Fed. Appx. 101, 2003 WL 22037275 (2d Cir. 2003) | 9n |
| *Dist. Atty's Office for the Third Jud. Dist. v. Osborne*, 129 S.Ct. 2308 (2009) | 5n |
| *Doe v. Phillips*, 81 F.3d 1204 (2d Cir. 1996) | 19, 23 |
| *Drake v. City of Rochester*, 96 Misc.2d 86 (Sup. Ct., Monroe Co. 1978) | 16, 24 |
| *Eifert v. Bush*, 27 A.D.2d 950 (2d Dept. 1967) | 17 |
| *Ferrari v. County of Suffolk*, 2011 WL 2297125 (E.D.N.Y. June 7, 2011) | 7n |
| *Fiacco v. City of Rensselaer*, 783 F.2d 319 (2d Cir. 1986) | 7n, 9n, 10, 12 |
| *Fischer v. Maloney*, 43 N.Y.2d 553 (1978) | 15 |
| *Foy v. Barry*, 87 A.D. 291 (1st Dept. 1903) | 16 |
| *Gagan v. Norton*, 35 F.3d 1473 (10th Cir. 1994) | 21 |
| *Gentile v. County of Suffolk*, 926 F.2d 142 (2d Cir. 1991) | 7, 7n, 9, 9n, 10 |
| *Genzler v. Longanbach*, 410 F.3d 630 (9th Cir. 2005) | 19 |

| *Case* | *Page* |
|--------|--------|

*Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985)......................................  9n

*Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2005)....................................  8n, 22

*Guardian Life Ins. Co. of America v. Handel*, 190 A.D.2d 57
    (1st Dept. 1993)........................................................................  16

*Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 566 (1st Cir. 1989)....................  8n

*Haley v. City of Boston*, 657 F.3d 39 (1st Cir. 2011)..................................................  7n, 9, 12

*Hall v. Smathers*, 240 N.Y. 486 (1925)....................................................................  17

*Hauser v. Bartow*, 273 N.Y. 370 (1937)..................................................................  16

*Haywood v. City of Chicago*, 378 F.3d 714 (7th Cir. 2004).....................................  23, 24n

*Henry v. County of Shasta*, 132 F.3d 512 (9th Cir. 1997),
    *amended*, 137 F.3d 1372 (1998)....................................................  9

*Hill v. City of New York*, 45 F.3d 653 (2d Cir. 1995)...............................................  19

*Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999)..............................  12-13

*Hogan v. City of Easton*, 2006 WL 3702637 (E.D. Pa. Dec. 12, 2006)...................  12

*Houston v. Partee*, 978 F.2d 362 (7th Cir. 1992)....................................................  5, 6, 20

*Imbler v. Pachtman*, 424 U.S. 409 (1976)...............................................................  18, 19

*Jocks v. Tavernier*, 316 F.3d 128 (2d Cir. 2003)....................................................  14, 14n

*Kalina v. Fletcher*, 522 U.S. 118 (1997).................................................................  18, 21, 23, 24n

*Katzman v. Essex Waterfront Owners LLC*, __ F.3d __, 2011 WL 5252614
    (2d Cir. Nov. 4, 2011)...................................................................  5

*Kemp v. Lynch*, 275 A.D.2d 1024 (4th Dept. 2000).................................................  14

*Kinge v. State*, 79 A.D.3d 1473 (3d Dept. 2010)....................................................  14, 17

| *Case* | *Page* |
|---|---|
| *Kulwicki v. Dawson*, 969 F.2d 1454 (3d Cir. 1992)..................................................... | 20 |
| *Lawrence v. Houston*, 172 A.D.2d 923 (3d Dept. 1991).......................................... | 16-17 |
| *Leka v. City of New York*, 04 Civ. 8784 (S.D.N.Y.)................................................ | 11 |
| *Limone v. United States,* 497 F. Supp.2d 143 (D. Mass. 2007),<br>      aff'd in part, 579 F.3d 79 (1st Cir. 2009)........................................................ | 14n, 15 |
| *Malley v. Briggs*, 475 U.S. 335 (1986)..................................................................... | 20 |
| *Matter of Russo v. Nassau County Community College*,<br>      81 N.Y.2d 690 (1993) ............................................................................... | 21 |
| *Mejia v. City of New York*, 119 F. Supp.2d 232 (E.D.N.Y. 2000)............................ | 20 |
| *Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009)....................................... | 8n |
| *Myers v. County of Orange*, 157 F.3d 66 (2d Cir. 1998).......................................... | 10n |
| *Newton v. City of New York*, 681 F. Supp.2d 473 (S.D.N.Y. 2010)....................... | 17 |
| *Odd v. Malone*, 538 F.3d 202 (3d Cir. 2008).......................................................... | 18, 23 |
| *Orange v. Burge*, 2005 WL 742641 (N.D. Ill. Mar. 30, 2005)................................. | 6 |
| *Padilla v. City of Chicago*, 2011 WL 379413 (N.D. Ill. Aug. 24, 2011)................. | 7n |
| *Parks v. Greenberg*, 194 A.D.2d 484 (1st Dept. 1993)............................................. | 16 |
| *Patterson v. Burge*, 328 F. Supp.2d 878 (N.D. Ill. 2004)......................................... | 6 |
| *People v. Goodman*, 69 N.Y.2d 32 (1086)............................................................... | 14n |
| *Putnam v. County of Steuben*, 61 A.D.3d 1369 (4th Dept. 2009)............................. | 14 |
| *Quartararo v. Catterson*, 917 F. Supp. 919 (E.D.N.Y. 1996)................................... | 22 |
| *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123 (2d Cir. 1997).................... | 5n |
| *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119 (2d Cir. 1991)........................... | 6, 7n |

*Case*          *Page*

*Rodrigues v. City of New York*, 193 A.D.2d 79 (1st Dept. 1993).............................. 16, 24

*Sargiss v. Magarelli*, 12 N.Y.3d 527 (2009)............................................................ 16

*Simms v. The City of New York*, 2011 WL 4543051
(E.D.N.Y. Sept. 28, 2011)................................................................ 7n

*Simon v. City of New York*, 2011 WL 4940689 (E.D.N.Y. Oct. 7, 2011)................ 24n

*Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995)................................... 6n

*Smith v. City of Fontana*, 818 F.2d 1411 (9th Cir. 1987)........................................ 12

*Spurlock v. Thompson*, 330 F.3d 791 (6th Cir. 2003).................................... 20, 22

*Steidl v. Fermon*, 494 F.3d 623 (7th Cir. 2007)........................................... 5

*Sylvester v. City of New York*, 385 F. Supp.2d 431 (S.D.N.Y. 2005)....................... 15

*TADCO Const. Corp. v. Dormitory Auth. of State of New York*,
700 F. Supp.2d 253 (E.D.N.Y. 2010)........................................................ 16

*Taylor v. RED Dev., LLC*, 2011 WL 3880881 (D. Kan. Aug. 31, 2011).................. 7n

*Tillman v. Burge*, 2011 WL 2975671 (N.D. Ill. July 20, 2011).............................. 6

*Vann v. City of New York*, 72 F.3d 1040 (2d Cir. 1995).......................................... 9n, 10, 12

*Vineyard v. County of Murray, Georgia*, 990 F.2d 1207 (11th Cir. 1993).............. 8n, 12

*Wahhab v. City of New York*, 386 F. Supp.2d 277 (S.D.N.Y. 2005)....................... 15

*Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992)....................................... 8, 10n, 11

*Walker v. City of New York*, No. 91-cv-02327 (S.D.N.Y.
filed June 10, 1993)................................................................... 11, 13

*Warney v. Monroe County*, 587 F.3d 113 (2d Cir. 2009)........................................ 20, 21

*White v. Frank*, 855 F.2d 956 (2d Cir. 1988)......................................................... 20, 21

| *Case* | *Page* |
|---|---|

*W.I.L.D. W.A.T.E.R.S., Ltd. v. Martinez*, 152 A.D.2d 799 (3d Dept. 1989).............. 15

*Williams v. City of New York*, 690 F. Supp.2d 338 (S.D.N.Y. 2010)....................... 7n

*Yarris v. County of Delaware*, 465 F.3d 129 (3d Cir. 2006)................................... 20, 21

*Zahrey v. City of New York*, 98 Civ. 4546 (S.D.N.Y.)............................................. 11, 13

*Zahrey v. City of New York*, 2009 WL 54495 (S.D.N.Y. Jan. 7, 2009)................... 13

### *Constitution and Statutory Provisions*

United States Code

      Title 42, Section 1983................................................................. *passim*

Federal Rules of Civil Procedure

      Section  8(b)............................................................................... 4

New York Civil Procedure Law and Rules

      Section 3013................................................................................ 14

New York Criminal Procedure Law

      Section 620.30............................................................................ 24n

New York Code of Rules and Regulations

      Title 21, Section 1401.2.............................................................. 21

New York Public Officers Law

      Section 86................................................................................... 21

***Other***                                                            ***Page***

New York Jurisprudence 2d Fraud and Deceit

       Volume 60A, Section 58 (Thomson West 2011)......................................... 17

Siegel, N.Y. Prac. § 208 (4th ed.)............................................................................. 14

*The City of New York Commission to Investigate Allegations of Police*
*Corruption and the Anti-Corruption Procedures of the Police Department,*
pp. 36-43 (http://www.parc.info/client_files/Special%20Reports/
4%20-%20Mollen%20Commission%20-%20NYPD.pdf)
(last visited November 16, 2011)............................................................................. 13-14

## PRELIMINARY STATEMENT

Jabbar Collins spent 16 years in prison for a heinous murder he did not commit. Brooklyn ADA Michael Vecchione caused Collins to be convicted by illegally coercing witnesses, suppressing devastating impeachment material, and presenting false testimony and argument concerning every key witness. Aided by colleagues, he perpetuated Collins's wrongful conviction by falsely denying – for 15 years – that any specifically-requested *Brady* material existed. Only the determination of Federal Judge Dora Irizarry brought the full truth to light. She compelled the D.A.'s Office to disgorge the very information the Office had denied. The Office then *consented*, not just to vacate Collins's conviction, but to a virtually unheard-of dismissal of the underlying indictment, with prejudice. This lawsuit followed.

The Complaint contains claims under 42 U.S.C. § 1983, and State law, against New York City and various individuals. Two defendants, homicide detectives Vincent Gerecitano and Jose R. Hernandez, have answered and do not challenge the Complaint. The other defendants move to dismiss, contending that the Complaint fails to state a cause of action, is factually implausible, or is barred by prosecutorial immunity. After summarizing the relevant facts, we address whether the Complaint states valid claims, then address the immunity issues.

## STATEMENT OF FACTS

Collins was prosecuted for the February 6, 1994, robbery-murder of a Brooklyn landlord. Cmpt., ¶ 33. The two assigned detectives, Gerecitano and Hernandez, caused Collins to be charged with this crime, without probable cause, by coercing a false statement from a heroin addict, Edwin Oliva, and knowingly swearing to a false complaint. They did so even though they knew the perpetrator was wounded but Collins was not, Collins had a strong alibi, and several witnesses gave statements pointing to an alternate suspect. ¶¶ 35-61, 69-77.

After Collins was indicted, the case fell apart. Oliva recanted his coerced statement. A 911 tape proved that the prospective testimony of another witness, Angel Santos, a drug addict,

1

was false. A third witness, Adrian Diaz, another drug user who had come forward seeking a financial reward, had absconded from his own probation and moved to Puerto Rico.  ¶¶ 88-91.

To force Oliva to give false testimony notwithstanding his recantation, Vecchione arranged with State authorities to illegally revoke Oliva's work release on his robbery conviction and to send him back to State prison. Vecchione then used ADA Posner's fraudulent "affirmation," falsely signed and "sworn" to by someone else, to obtain a court order allowing the D.A.'s Office to take custody of Oliva, conditioned on Oliva's written consent.  When Oliva *refused*, Vecchione defied the order and had him brought to his office anyway.  Vecchione then threatened Oliva with physical harm and to keep him imprisoned if he did not cooperate, but promised to restore his work release if he did.  Oliva testified.  In less than a week, his work release was restored.  ¶¶ 98-119.

Vecchione had defendants Maher and Bondor illegally take Santos into custody and bring him to Vecchione's office.  Vecchione threatened Santos with physical harm and imprisonment if he would not testify.  When Santos refused, Vecchione submitted a fraudulent "affidavit," signed by someone else in Vecchione's name and falsely notarized, to obtain a material witness order.  Vecchione did not bring Santos to court "forthwith," for appointment of counsel and a bail hearing, as the material witness order and underlying statute required, but brought him directly to jail.  He kept Santos illegally imprisoned for two weeks, one week in the jail, the second under armed guard at a hotel.  ¶¶ 120-143, 336-39.  When Santos finally agreed to testify to "facts" Vecchione knew were false, Vecchione covered up his coercion of Santos by causing false complaints to be filed with the D.A.'s office and the NYPD accusing Collins *and his family* of threatening to kill Santos.  He then announced at trial that Santos was in "protective" custody.  Although the threat allegations were extraordinarily serious, the defendants, knowing the allegations were fabricated, never investigated them.  ¶¶ 148-162, 340.

Vecchione, Maher and Bondor located Diaz in Puerto Rico.  He tried to flee, fearing

arrest, but they promised to "take care" of his probation violation if he would return to testify, which he did. Afterwards, Vecchione repeatedly interceded with the Probation Department to not proceed with its plans to violate Diaz. Vecchione filed documents falsely claiming that Diaz had fled to Puerto Rico because he had been threatened by Collins. ¶¶ 164-200.

At trial, Vecchione did not disclose his coercion of Oliva and Santos, his promises to Oliva and Diaz, Oliva's recantation, various impeaching statements, or the 911 tape refuting Santos. ¶¶ 201-30. Vecchione falsely represented to the jury that these witnesses were voluntarily testifying simply because they had been asked to and had no conceivable reason to lie. ¶¶ 222, 226, 229.

Following trial, Collins filed many requests with the D.A.'s Office, under the Freedom of Information Law ("FOIL"), for specific documents constituting *Brady* material. Defendants Twersky, D'Angelo, Marmer, Dennehy, Modest, and Mandel ("the FOIL defendants") were assigned the administrative task, as FOIL Records Access Officers, of responding to these requests. They falsely represented to Collins and to various courts, many times under oath, that the D.A.'s Office did not possess the requested materials, and also relied on Vecchione's false written complaints claiming threats to oppose any disclosure. ¶¶ 163, 199, 242-282.

In 2006, Collins moved to vacate his conviction. Vecchione, now Chief of Rackets, had not handled the Collins case since 1995 and was no longer assigned to it. ¶ 234. Acting purely as a "fact" witness, ¶ 293, he knowingly lied that no witness had been coerced or had received any promise, no witness had recanted, and there was no undisclosed *Brady* material. Based upon these false representations, which Vecchione repeated in an affirmation, the Office opposed Collins' motion. Prosecutors contended the motion was "fraudulent," and convinced the court to deny it without a hearing.[1]   ¶¶ 283-86, 293-306.

---

[1]Defendants complained then, and, in the introduction to their memorandum, they complain now, that Collins used a ruse to interview Diaz. But, in posing as an  investigator for the D.A.'s Office, Collins

Ultimately, Judge Irizarry forced the D.A.'s Office to reveal much of the evidence Collins had been seeking.  The habeas hearing resulted in Santos's remarkable testimony that Vecchione had threatened him with physical violence, illegally imprisoned him for two weeks, and suppressed the 911 tapes contradicting his story.  ¶¶ 307-52.  In crediting Collins' allegations concerning Santos and the other two witnesses, Judge Irizarry condemned as "shameful" Vecchione's behavior as well as the Office's continuing defense of it even as it conceded habeas relief.  ¶¶ 353-59.  Hynes issued statements fully approving of Vecchione's conduct even after Judge Irizarry's findings deploring it.  ¶¶ 348-52, 360.  On June 9, 2010, after 16 years in prison, Collins finally was released.  ¶ 361.

## ARGUMENT

### POINT I

### PLAINTIFF STATES VALID, PLAUSIBLE FEDERAL CLAIMS

**A.    Introduction**

A pleading must contain a "short and concise statement of the claim showing that the pleader is entitled to relief."  F. R. Civ. P. 8(a)(2).  Under this rule, "a complaint must contain sufficient factual matter, accepted as true ... [to support] 'a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic*

---

used a ruse that was calculated to obtain the *truth*, and did so.  Diaz later gave an affidavit *confirming* his statements to Collins.  Cmpt., ¶ 189.  Collins, in his desperation, also used a ruse to try to obtain Diaz's pre-sentence report, a tactic that was unsuccessful and has no bearing on this case.  Defendants complain that Collins paid $300 to retain an attorney for Oliva.  But there is absolutely nothing wrong, legally or ethically, with such a payment, which Collins made at the request of Oliva, who was indigent, so Oliva could be assisted by counsel in obtaining the release to Collins of Oliva's records.  (Defendants' Memorandum, p.1, also *falsely* asserts, with no citation, that Collins and Oliva were assigned to the same prison.)  Everything that Oliva then said in his affidavit was *proven true*.  ¶¶ 286, 324-26.  Knowing that Collins had obtained *truthful* evidence, the D.A.'s Office smeared him with false claims of fraud in order to divert the State court from focusing on the Office's own despicable misconduct.  It is astounding that defendants would rely even now on the discredited State court decision which their lies brought about.

4

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual content must be sufficient for the court, based upon "its judicial experience and common sense," to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 1949-50.  In evaluating the plausibility of the complaint, the court must give the plaintiff the benefit of all reasonable inferences from the pleaded facts, which must be accepted as true. *Id.*; *Katzman v. Essex Waterfront Owners LLC*, __ F.3d __, 2011 WL 5252614, *2  (2d Cir. Nov. 4, 2011).

**B.   The Causes of Action (Sixth and Seventh) Against The Individuals**

Defendants do not challenge the Sixth Cause of Action, which contains a § 1983 claim against Gerecitano and Hernandez.  Defendants Vecchione, Maher and Bondor do not challenge the Seventh Cause of Action (except on immunity grounds, addressed below).  Only the FOIL defendants challenge the Seventh Cause of Action.  They argue their conduct was post-trial but only pre-verdict conduct is actionable under § 1983. *See* Defts. Mem. 13-14.  They are  wrong.

Government officials have a continuing, post-conviction, due process obligation to disclose *Brady* material to correct "the taint on the trial" caused by the unlawful withholding at trial. *Steidl v. Fermon*, 494 F.3d 623, 630 (7th Cir. 2007) (*Brady* material discovered by police but wrongfully withheld *13 years* after trial); *Houston v. Partee*, 978 F.2d 362 (7th Cir. 1992) (police and prosecutor liable for withholding *Brady* material discovered several years after trial).  Defendants cite no contrary case.[2]

The FOIL defendants also are liable under a malicious prosecution theory for acting in concert with Vecchione to falsely deny the Office's possession of exculpatory materials

---

[2]*Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997), upholds a due process claim against police who fabricate evidence pretrial, but does not address the question here. *Dist. Atty's Office for the Third Jud. Dist. v. Osborne,* 129 S.Ct. 2308 (2009), holds that *Brady* disclosure rules do not apply to exculpatory DNA evidence *created after trial*, but does not affect the existing, continuing duty to disclose evidence that existed and should have been disclosed at trial. *Steidl v. City of Paris*, 2010 WL 5125807, at *4 (C.D. Ill. Dec. 8, 2010).

negating probable cause, and thereby prolonging the unlawful seizure of Collins' person, in violation of his Fourth Amendment rights. *See* Cmpt., ¶¶ 420-21; *Tillman v. Burge*, 2011 WL 2975671, at \*27 (N.D. Ill. July 20, 2011) (defendants "continued [plaintiff's] prosecution after becoming aware of facts ... that would have seriously undermined ...the probable cause for Plaintiff's arrest and prosecution"); *Orange v. Burge*, 2005 WL 742641, at \*13 (N.D. Ill. Mar. 30, 2005) (same); *Patterson v. Burge*, 328 F. Supp.2d 878, 899-901 (N.D. Ill. 2004) (post-conviction cover-up of exculpatory evidence continued the malicious prosecution), citing *Houston v. Partee*, 978 F.2d 362, 368 (7th Cir. 1992; Point II.A, *infra*. Defendants do not cite a single case holding that malicious prosecution cannot be based upon post-trial behavior.[3]

### C.   The *Monell* Claims Involving The NYPD (Eighth) and Brooklyn D.A. (Ninth) Are 'Plausible'

#### 1.   <u>The Applicable Law</u>

The City challenges the *plausibility* of Plaintiff's factual claims that it is liable for the individual defendants' violations of Collins' constitutional rights under a *Monell* theory. But defendant's papers read like a summary judgment motion, not a pre-discovery motion to dismiss under Rule 12(b)(6). The facts alleged in the Complaint need not be admissible at trial, *see Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123-24 (2d Cir. 1991), and need not suffice to *prove* Plaintiff's claim, but need merely show Plaintiff's claim is *plausible*.

In the Second Circuit, due to the inherent difficulty of obtaining municipal policy evidence, a *Monell* claim based upon a municipality's failure to train, supervise, or discipline its employees is not required to "identify a specific deficiency ... or to establish a causal link between [such deficiency] and the misconduct." *Amnesty America v. Town of West Hartford*,

---

[3]Defendants (p. 14) cite *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010), but it concerns whether the issuance of a summons constitutes a Fourth Amendment "seizure." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion) decides only that a malicious prosecution claim may not be based upon a substantive due process theory. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 115 (2d Cir. 1995), analyzes a wrongful prosecution claim based upon pretrial misconduct only.

361 F.3d 113, 130 n.10 (2d Cir. 2004).  The Second Circuit has not had occasion to reexamine

this rule after *Iqbal* and *Twombly*, but many courts in this Circuit continue to apply it,[4] and so

do other courts.[5]  Under any approach, the Complaint suffices.

Under *Monell*, a municipality may be held liable under § 1983 for an unlawful policy, or

*condoned* unlawful custom or practice, which causes an employee to violate a person's

constitutional rights.  *See Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011); *Amnesty*

*America*, 361 F.3d at 125-26.  The existence of an unlawful policy or condoned custom or

practice may be shown with evidence that an agency's policymaker *ratified* the misbehavior,

either by directly approving the employee's actions or "consciously cho[osing] to ignore them

..." *Amnesty America*, 361 F.3d at 126.  Ratification "corroborates that the individual ...

misconduct was the result of an established practice or policy."  *Gentile v. County of Suffolk*,

926 F.2d 142, 151 (2d Cir. 1991).  Even where other incidents are insufficient to establish an

unlawful "custom," a policymaker's failure to investigate them,[6] or its deficient disciplinary

---

[4] *See Castilla v. City of New York*, 2011 WL 4345934, *4 (S.D.N.Y. Aug. 22, 2011 (Stein, D.J.), citing *Ferrari v. County of Suffolk*, 2011 WL 2297125, at *9 (E.D.N.Y. June 7, 2011) (Seybert, D.J.); *Williams v. City of New York*, 690 F. Supp.2d 338, 346 (S.D.N.Y. 2010 (Chin, D.J.).  *But see Simms v. The City of New York*, 2011 WL 4543051, *4 (E.D.N.Y. Sept. 28, 2011) (Garaufis, D.J.) (holding that under *Iqbal* plaintiff must "plead facts sufficient for a court to reasonably infer that some type of municipal policy, practice, or custom" caused plaintiff to be injured).

[5] *See Haley v. City of Boston*, 657 F.3d 39, 52-53 (1st Cir. 2011) (upholding complaint alleging police intentionally withheld *Brady* material because of court's awareness that suppression of exculpatory evidence is a serious problem in the criminal justice system and likely could not occur without official toleration); *Taylor v. RED Dev., LLC*, 2011 WL 3880881, *3 (D. Kan. Aug. 31, 2011) (because a plaintiff rarely has access to "internal policies or training procedures prior to discovery ... only minimal factual allegations should be required at the motion to dismiss stage"); *Padilla v. City of Chicago*, 2011 WL 379413, *5 (N.D. Ill. Aug. 24, 2011) ("conclusory allegations ... are sufficient").

[6] *See Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991) ("municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers ... [acted] in violation of the complainants' civil rights"); *Gentile v. County of Suffolk*, 926 F.2d 142, 153 (2d Cir. 1991) (authorities "consistently ignore[d] evidence of misconduct"); *Fiacco v. City of Rensselaer*, 783 F.2d 319, 331 (2d Cir. 1986) (city's failure to investigate prior incidents "would have been viewed by the officers ... as reflecting an indifference").

system,[7] may create liability by encouraging violations.

In *Walker v. City of New York*, 974 F.2d 293, 300 (2d Cir. 1992), the Second Circuit upheld the plaintiff's claim that New York City was liable for a *Brady* violation, even without a history of similar misconduct, where it had been highly foreseeable that such a constitutional violation would occur absent appropriate training or supervision. *See Canton v. Harris*, 489 U.S. 378, 388-90 & n.10 (1989). *Connick v. Thompson*, 131 S.Ct. 1350 (2011), by a razor-thin 5-4 vote, overruled this aspect of *Walker* as to a *D.A.'s Office* – requiring a history of prior similar misconduct to put the policymaker on notice of a need for particular *training* for law school-educated professionals – but it did not overrule *Walker* as applied to police departments. Courts have upheld municipal liability for failing to train police officers concerning their *Brady* obligations even in the absence of known prior violations.[8]

Significantly, *Connick*, upon which the City bases its entire argument, is not an insufficient *pleading* case at all: it involved the sufficiency of a plaintiff's evidence at *trial*. It only considered the requisites of a *failure-to-train* claim, but did not address any other theory of recovery under *Monell*. The City's suggestion that *Connick* imposes *pleading* requirements at all, let alone in a non-training case, is wrong. Following *Connick*, the First Circuit, noting *Iqbal*'s requirement that "the reviewing court ... draw on its judicial experience and common sense," 129 S.Ct. at 1950, upheld as "plausible" a complaint alleging municipal liability for police *Brady* violations because "[d]isclosure abuses are a recurring problem in criminal cases,"

---

[7]*Vineyard v. County of Murray, Georgia*, 990 F.2d 1207, 1211-12 (11th Cir. 1993) (no disciplinary manual, policies, or procedures); *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 566 (1ˢᵗ Cir. 1989) (deficient disciplinary system "made it highly likely that the police officers ... would engage in [unconstitutional] conduct").

[8]*See Moldowan v. City of Warren*, 578 F.3d 351, 394 (6ᵗʰ Cir. 2009); *Gregory v. City of Louisville*, 444 F.3d 725, 753-54 (6ᵗʰ Cir. 2005). *See also Vineyard v. County of Murray, Georgia*, 990 F.2d 1207, 1212 (11ᵗʰ Cir. 1993) (single-incident liability where the incident was attributable to the sheriff's failure to have any policy manual or procedures for disciplining officers).

the non-disclosure was "wholly unexplained," and experienced detectives would not have engaged in such misbehavior if they did not believe that "their conduct was encouraged, or at least tolerated, by the [Police Department]." *Haley v. City of Boston*, 657 F.3d 39, 52-53 (1st Cir. 2011). No specific prior violations were noted or apparently pled.

Defendant's various arguments (Mem., pp. 18-25), which minimize the probative value of the specific cases upon which Plaintiff bases his claim of notice, are incorrect:

(1)     Even in an inadequate *training* case, the prior violations need not be identical with those in the plaintiff's case. In *Connick*, a blood-evidence-withholding case, the Court merely required that the prior violations involve withholding of "physical or scientific evidence of *any kind*," 131 S. Ct. at 1360 (emphasis added). Other cases also define "similarity" by general categories.[9]

(2)     There is no minimum number of prior incidents required to prove a valid *Monell* claim of deliberate indifference to the need to supervise or discipline; even one may suffice.[10]

(3)     Post-incident violations *are* relevant, not to demonstrate notice, but to "shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right." *Bordanaro v. McLeod*, 871 F.2d 1151, 1166-67 (1st Cir. 1989); *see Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985). *See also Gentile v. County of Suffolk*, 926 F.2d at 151 (post-incident ratification permits inference that unlawful policy existed at the time of the violation of the plaintiff's rights); *Henry v. County of Shasta*, 132 F.3d 512, 520 (9th Cir. 1997), *amended*, 137 F.3d 1372 (1998) ("failure even after being sued to correct a blatantly unconstitutional course of [conduct]..." is evidence of the prior policy).

(4)     The authorities' failure to investigate officers involved in settled civil lawsuits *is relevant* to show deliberate indifference to validated claims, regardless of *pro*

---

[9]*See, e.g., Cash v. County of Erie*, 654 F.3d 324, 329 (2d Cir. 2011) (relying, in a prison sexual assault case, on prior incident of *invited sexual contact* between a prisoner and guards to "support[] a jury inference that defendants were not committed ... to protect prisoners from sexual exploitation"); *Vann v. City of New York*, 72 F.3d 1040, 1050 (2d Cir. 1995) (upholding reliance, in a police brutality case, on "evidence of the Department's general methods of dealing with *problem policemen* ...") (emphasis added); *Gentile v. County of Suffolk*, 926 F.2d 142, 146 (2d Cir. 1991) (plaintiff properly relied, in police brutality case, on "employee misconduct ... in *several different areas of criminal law*" (emphasis added)).

[10]*See Cash v. County of Erie*, 654 F.3d at 339 (one incident where the risk of injury was inherently obvious); *Amnesty America*, 361 F.3d at 129 (single "egregious" incident); *Disorbo v. Hoy*, 74 Fed. Appx. 101, 2003 WL 22037275, *3 (2d Cir. 2003) (unpublished opinion) (*one* prior incident); *Fiacco*, 783 F.2d at 329–32 (five incidents in a two-year period); *Babi-Ali v. City of New York*, 979 F. Supp. 268, 274 (S.D.N.Y. 1997) (Batts, J.) (nine *Brady* violations by prosecutors over many years).

*forma* disclaimers of liability. *See Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986) ("[*w*]*hether or not the claims had validity*, the very assertion of a number of such claims put the City on notice") (emphasis added); *Vann*, 72 F.3d at 1049 (mere complaints "followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents").

### 2. The D.A. Claim

The City bases its argument on *Connick*, even though the type of *Monell* claim at issue there – inadequate *training* – is not the principal claim Collins advances here. Collins alleges that Vecchione and his colleagues applied the *policy* of the Office, or its condoned custom or practice, to coerce witnesses, to suppress *Brady* material, to rely at trial on false or misleading evidence and argument, and to cover-up such misconduct after trial. *See* Cmpt., ¶¶ 438-49 & n.15. The Complaint cites *admissions* by the Office, *see* ¶¶ 104-05 & n.5, 441(d) & n.13, 449 & n.15, *express ratifications* of such misconduct by Hynes, *see* ¶¶ 348-352, 360, 451, 462, 467, 501, 506-11, and Hynes's indifference to a pattern of similar violations, including by *Vecchione*. *See* ¶¶ 442, 447-89. Contrary to defendant's inaccurate assumption, *see* Deft. Mem. 9-10, the constitutional violations in *this* case did not end with Collins' conviction at trial in 1995, but continued through his exoneration in 2010. ¶¶ 244-282, 293-347, 353-58. During this period, employees of the Office lied to Collins, to each other, and to the courts that the *Brady* material that Collins sought did not exist. *Id.* It is disingenuous for the City to make this look like nothing more than a failure-to-train claim as to which only pre-1995 events are material.

It is well-established that *Monell* liability may be based upon the unlawful managerial or administrative policies of county District Attorneys on behalf of the municipalities they represent.[11] Here, the overall plausibility of Collins' claims involving the policies of the

---

[11]*See, e.g., Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992) (upholding claim of deliberate indifference to need to train, supervise, or discipline *Brooklyn* ADAs regarding their *Brady* obligations); *Myers v. County of Orange*, 157 F.3d 66 (2d Cir. 1998) (upholding jury verdict that a D.A.'s unlawful cross-complaint policy resulted in plaintiff's wrongful prosecution); *Gentile v. County of Suffolk*, 926 F.2d 142, 153 (2d Cir. 1991) (upholding verdict against the county for the D.A.'s policy of failing to investigate, sanctioning, and covering up misconduct by local police).

10

Brooklyn D.A.'s Office is demonstrated by the City's history of agreeing to substantial

settlements of similar lawsuits, beginning with *Walker,* in 1993, for $3.5 million, *Leka v. City of*

*New York*, 04 Civ. 8784 (S.D.N.Y.) (DAB), for $3.1 million, and *Zahrey v. City of New York*,

98 Civ. 4546 (S.D.N.Y.) (DCP), for $750,001 plus counsel fees. *See* Complaint, ¶¶ 449, n.15,

467 n.18, 514(d), and Ex. H, No. 14; Dkt. Entry #28, Stipulation and Order, *Walker v. City of*

*New York*, No. 91-cv-02327-JSM (S.D.N.Y. filed June 10, 1993).  In *Zahrey,* judgment under

Rule 68 (with the usual disclaimer of liability) was entered against not just the City but also the

Chief of Hynes' Civil Rights Bureau and another supervisor on claims of evidence

manufacturing, coercion, and malicious prosecution.   Cmpt., ¶ 449 n.15.

The City makes two essential arguments as to why Plaintiff's claims are insufficient.

First, it contends that *Walker* precludes liability for failing to *train* ADAs not to fabricate

evidence or suborn perjury.  Defts. Mem. 18.  However, in a footnote, the City acknowledges

that *Walker* points out that there could be liability upon a showing of a "*practice* of condoning"

such misconduct.  Defts. Mem. 18, n. 8 (quoting *Walker*, 974 F.2d at 300 [emphasis added]).

But this *is* Collins's claim.  *See* Cmpt., ¶¶ 438-41, 451-66.  Indeed, the Complaint alleges that

Hynes *ratified* Vecchione's conduct in *this* case after Judge Irizarry found that Vecchione had

coerced apparently false testimony from Angel Santos and had forced Edwin Oliva to testify

falsely after he had recanted his statement to police.  *See* ¶¶ 332-60, 506-11.

Second, the City, relying entirely on its misconstruction of *Connick*, argues that the 56

cases listed in Exhibit H to the Complaint do not establish the plausibility of plaintiff's claim

that the City was indifferent to a need to supervise or discipline ADAs in connection with the

constitutional violations alleged in this case.  *See* Deft. Mem. 18-25.   But defendant overlooks

huge sections of the Complaint in making this argument, including the following:

1. The Complaint's detailed factual allegations that Hynes's office
   affirmatively promulgated or tolerated policies, customs, or practices to
   coerce witnesses, mislead courts, defendants, and juries, withhold *Brady*

11

material, and cover all this up.   Cmpt. ¶¶ 105, 438-516 & nn.5, 13, 17.

2.      Hynes's history of indifference to *misconduct by Vecchione himself*, together
        with his *endorsement* of Vecchione's behavior with praise and promotions.  *See*
        Cmpt, ¶¶ 468-511; *Vann v. City of New York*, 72 F.3d at 1050-51 (liability for
        failure to monitor or supervise officer with history of civilian complaints);
        *Hogan v. City of Easton*, 2006 WL 3702637, at *10 (E.D. Pa. Dec. 12, 2006)
        ("municipal liability may be imposed under § 1983 if that same officer had a
        history of [similar] misconduct"), citing *Beck v. City of Pittsburgh*, 89 F.3d 966,
        973 (3d Cir. 1996); *Davis v. Lynbrook Police Dep't.*, 224 F. Supp.2d 463, 478-
        79 (E.D.N.Y. 2002) (Spatt, D.J.) (upholding inadequate supervision claim where
        agency had received but failed to investigate repeated complaints against the
        same officer).  Vecchione, it may be inferred, would not have engaged in such
        misconduct, as Chief of the Homicide Bureau and then Chief of Rackets, unless
        he knew that Hynes agreed with, condoned, or would at least tolerate, his
        misbehavior.  *See Haley v. City of Boston, supra.*

3.      Hynes's failure, since taking office in 1990, to institute *any* disciplinary manual,
        policies, standards, or procedures, or to *ever* investigate, let alone discipline,
        prosecutors accused of misconduct.  *See* Cmpt, ¶ 447-49, 512-16 & n.15; *Vann*,
        72 F.3d at 1050-51 (liability may be based upon inadequate supervisory
        procedures for problem police officers); *Vineyard v. County of Murray, Georgia*,
        990 F.2d 1207, 1212 (11ᵗʰ Cir. 1993) (basing liability on "inadequate procedures
        for recording and following up complaints ... [and] no policies and procedures
        manual"); *Fiacco*, 783 F.2d at 330-32 (basing liability on a history of
        "uninterested and superficial" responses to complaints).

Moreover, as we have shown, other instances of misconduct need not be identical to the

misconduct in plaintiff's case, or have occurred prior to the verdict, *see* p. 9, *supra*, particularly

where, as here, the misconduct was ongoing for 16 years and included a post-trial cover-up.

The incidents listed in Exhibit H to the Complaint involved similar "kinds" of misconduct to

those in this case:  failure to disclose impeachment material, including prior inconsistent

statements, recantation evidence, 911 tapes, and/or information bearing on motives to lie;

reliance on false or misleading testimony and argument; and misuse of material witness orders

and subpoenas to coerce testimony.  Hynes' complete failure to ever investigate or discipline

prosecutorial misconduct, *of any and every kind,* fostered an "atmosphere of lawlessness."

*Smith v. City of Fontana*, 818 F.2d 1411, 1420 n.13 (9th Cir. 1987), *overruled on other grounds*

*by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9ᵗʰ Cir. 1999).  For pleading purposes, there

12

was no need for Plaintiff to cite *any* other misconduct case. *Plausibility* is all that he need show at this stage of the case.

### 3.    The NYPD Claim

Collins' Complaint, under *Canton* and *Walker*, alleges that NYPD policymakers were deliberately indifferent to an obvious need to train, supervise and discipline officers regarding the interrogation of witnesses, *Brady* disclosure obligations, and the Fourth Amendment's probable cause requirement.  ¶¶  427-31, 434.  Prior to plaintiff's arrest in 1994, the NYPD provided *no* training concerning proper interrogation methods with cooperating witnesses and officers' *Brady* obligations.  ¶ 429 & n.12 (basing allegation on depositions and document discovery in *Zahrey v. City of New York, et al.*, 98 Civ. 4546 ((DLP) (S.D.N.Y.).  But the Complaint does not rely solely on a *Canton/Walker* theory of an inherently obvious but ignored need to train, supervise, and discipline officers – it also cites the notice provided by the court decisions, lawsuit settlements, and official reports detailed in ¶ 431 of the Complaint and in the attached Exhibits F and G.  The cases listed in Exhibit F involve the failure, as in this case, to disclose impeachment material. The civil settlements listed in Exhibit G involved, as in Plaintiff's case, allegations that police manufactured or withheld evidence, gave false testimony, or initiated arrests or prosecutions without probable cause.

The Complaint also relies on the coercive conduct of Internal Affairs *supervisors* (acting jointly with the Brooklyn D.A.'s Office) in the *Zahrey* case in 1994-95. *See* Cmpt., ¶¶ 463-65. In upholding Zahrey's claim, the district court cited numerous other decisions upholding witness coercion claims against N.Y.C. detectives.  *Zahrey v. City of New York*, 2009 WL 54495, at *10-12 (S.D.N.Y. Jan. 7, 2009) (Pogue, D.J.).  The plausibility of the Complaint is still further supported by the Mollen Commission findings in 1994 – the year of Jabbar Collins's arrest – that the NYPD was indifferent to widespread police perjury, falsification of documents, and manufacturing of probable cause.  *The City of New York Commission to Investigate Allegations*

13

*of Police Corruption and the Anti-Corruption Procedures of the Police Department*, pp. 36-43 (http://www.parc.info/client_files/Special%20Reports/4%20-%20Mollen%20Commission%20-%20NYPD.pdf) (last visited November 16, 2011).

## POINT II

### THE STATE LAW CLAIMS ARE LEGALLY SUFFICIENT[12]

Under New York law, a pleading need only provide notice of the transactions and the material elements of each claim.  CPLR 3013.  Pleadings are liberally construed, the facts are accepted as true, and plaintiff is accorded "every possible favorable inference."  *ABN AMRO Bank, N.V. v. MBIA Inc.*, 17 N.Y.3d 208, 227 (2011).  *See* Siegel, N.Y. Prac. § 208 (4th ed.).

**A.    First Cause of Action - Malicious Prosecution**

The FOIL Defendants argue they cannot be held liable for *continuing* Collins's malicious prosecution after Collins was convicted at trial, essentially contending that the tort was complete at that point.  Defts. Mem. 9-10.  However, malicious prosecution is a *continuing* tort until there has been a "favorable termination of *the proceeding.*"  *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (emphasis added).  An official may be held liable for *continuing* a malicious prosecution after probable cause has dissipated or by withholding knowledge of evidence that would negate probable cause.  *See Kinge v. State*, 79 A.D.3d 1473, 1479-80 (3d Dept. 2010); *Putnam v. County of Steuben*, 61 A.D.3d 1369, 1371 (4th Dept. 2009); *Kemp v. Lynch*, 275 A.D.2d 1024, 1025-26 (4th Dept. 2000).  Although there does not appear to be any New York case on point,[13] other courts have held officials liable for causing the continuation of a

---

[12]Plaintiff is voluntarily discontinuing his Fifth Cause of Action (Negligent Misrepresentation).

[13]Defendants, at pp. 9-10 of their Memorandum, cite *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003), but it deals with whether there was probable cause to *initiate* a prosecution, and *People v. Goodman*, 69 N.Y.2d 32, 37 (1986), but it is purely a collateral estoppel case.  Contrary to defendants' apparent contention, where a conviction was unconstitutionally obtained or continued through fraud or other misconduct, and later vacated, the defendants may not "use their own misconduct as a shield."  *Limone v. United States*, 497 F. Supp.2d 143, 215 (D. Mass. 2007, *aff'd on other grounds*, 579 F.3d 79 (1st Cir. 2009).

prosecution during the post-conviction stage, such as by wrongfully withholding evidence tending to negate guilt. *See* pp. 5-6, *supra*.

The City (p. 10) contends that if the malicious prosecution claim is dismissed as to the FOIL defendants, there would be no *respondeat superior* liability for the City. However, such liability would continue in relation to police defendants Gerecitano and Hernandez.

**B.    Second Cause of Action - Intentional Infliction of Emotional Distress ("IIED")**

The sole basis of defendants' motion is that the New York Court of Appeals, 33 years ago, in *dictum*, "questioned" the availability of an IIED claim where other traditional tort claims may be asserted. Defts. Mem. 10-11, citing *Fischer v. Maloney*, 43 N.Y.2d 553, 558 (1978). *But see Limone v. United States,* 579 F.3d 79, 93-100 (1st Cir. 2009) (upholding common law IIED claim under the Federal Tort Claims Act for agents' withholding before and after trial of exonerating evidence). However, the proper course is to deny dismissal or summary judgment and submit IIED claims to the jury with instructions to avoid awarding duplicative damages. *See Wahhab v. City of New York*, 386 F. Supp.2d 277, 292-93 (S.D.N.Y. 2005) (Motley, Senior D.J.) (citing *Bender v. City of New York*, 78 F.3d 787, 793 (2d Cir. 1996)); *Sylvester v. City of New York*, 385 F. Supp.2d 431, 443-44 (S.D.N.Y. 2005) (Koeltl, D.J.).

**C.    Third Cause of Action - Abuse of Process**

Defendants contend that the Complaint fails to plead facts showing that defendants employed process for any "collateral objective." Deft. Mem. 11. They are wrong. The "'gist of the action for abuse of process ... is 'the improper use of the process after it is issued.'" *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984) (internal citations omitted). "Collateral objective" means using the process for a purpose not permitted by the law. *W.I.L.D. W.A.T.E.R.S., Ltd. v. Martinez*, 152 A.D.2d 799, 799 (3d Dept. 1989). The fact finder must "compare the purpose for which [the process] is intended with the purpose for which it was in fact used." New York Pattern Jury Instructions 3:51 (2010). The non-recipient of the process may sue provided he was

15

the target and the victim of the perversion of process. *Bd. of Ed. Of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Ass'n, Inc.*, 38 N.Y.2d 397 (1975).

A wrongdoer abuses process when he misuses a court procedure to improperly "coerce action," *Hauser v. Bartow*, 273 N.Y. 370, 374 (1937), such as improperly using a subpoena to compel a witness's appearance for interrogation at a D.A.'s Office, *see Rodrigues v. City of New York*, 193 A.D.2d 79, 86-87 (1st Dept. 1993), or at a police precinct, *see Drake v. City of Rochester*, 96 Misc.2d 86, 89-90, 100 (Sup. Ct., Monroe Co. 1978). *See also Foy v. Barry*, 87 A.D. 291, 292-93 (1st Dept. 1903) (improperly obtaining and executing an arrest warrant to obtain an advantage in a private dispute); *TADCO Const. Corp. v. Dormitory Auth. of State of New York*, 700 F. Supp.2d 253, 272 (E.D.N.Y. 2010) (Trager, D.J.) (same).

Here, the Complaint contends defendants improperly used "office" subpoenas and a material witness order for the improper "collateral objective" of forcing Santos and Oliva to appear at *the District Attorney's Office* against their will and without counsel and, in Santos's case, to illegally imprison him, and improperly used an "order to produce" to force Oliva to appear involuntarily. Cmpt., ¶¶ 93-118, 121-148, 376-80. This states a valid claim.

**D.**   **Fourth Cause of Action - Actual and Constructive Fraud**

Plaintiff's principal fraud claim is that the FOIL defendants, acting in concert with Vecchione, misled Collins concerning the existence of documents necessary for him to proceed with a motion to vacate his conviction. ¶¶ 385-392. Deliberate misrepresentations which induce detrimental reliance in connection with court proceedings are actionable; fraud claims are not limited to commercial transactions. *See Sargiss v. Magarelli*, 12 N.Y.3d 527 (2009) (misrepresentation of net worth during a divorce proceeding); *Parks v. Greenberg*, 194 A.D.2d 484, 485 (1st Dept. 1993) (improper notarization of filed affidavit); *Guardian Life Ins. Co. of America v. Handel*, 190 A.D.2d 57, 61 (1st Dept. 1993) (misleading, and withholding information from, a court); *Lawrence v. Houston*, 172 A.D.2d 923 (3d Dept. 1991) (fraudulent

16

inducement of a party to defer or forego a legal claim).  *See generally* 60A N.Y. Jur. 2d Fraud
and Deceit § 58 (Thompson West 2011) ("the range of false representations or statements which
will support a claim of fraud is virtually limitless").  Defendants, who have the burden, cite no
case suggesting a fraud claim is untenable simply because it relates to a criminal proceeding.

**E.**      **Tenth Cause of Action - Negligent Hiring, Training, And Supervision**

Contrary to *Newton v. City of New York*, 681 F. Supp.2d 473, 488 (S.D.N.Y. 2010)
(Scheindlin, D.J.), the City may be held liable for negligent retention or supervision even if the
employee was not acting outside the scope of his employment.  *See Hall v. Smathers*, 240 N.Y.
486, 490 (1925) (upholding claims against employee acting "*within* the scope of his
employment" *and* an employer for negligent hiring); *Kinge v. State of New York*, 79 A.D.3d
1473, 1478 (3d Dept. 2010) (emphasis added) (upholding plaintiff's verdict on *both* malicious
prosecution and negligent supervision claims).  This misconception arose from cases holding
that a negligent hiring claim was superfluous because there already was *respondeat superior*
liability for an employee's negligence.  *See, e.g., Eifert v. Bush*, 27 A.D.2d 950, 951 (2d Dept.
1967).  Here, however, the defendants are raising absolute immunity and other defenses.  If they
are successful, there will be no *respondeat superior* liability.  Thus, Plaintiff's negligent hiring
claim is *not* superfluous.  He would be unfairly prejudiced if the claim were dismissed now.

Finally, the City neglects to mention that defendants Gerecitano and Hernandez have
*denied* they were acting within the scope of their employment.  *See* Answer, at ¶¶ 29-30 (dated
May 13, 2011) (Doc. #19).  Indeed, Plaintiff alleges that Gerecitano, *after retiring from the
police force, and as a private citizen*, pressured Oliva to give false testimony at trial.  Cmpt, ¶¶
98-102.  Arguably this conduct was outside the scope of his employment.  The remaining
individual defendants have not yet answered, and thus the City's claim that there is no issue of
fact as to whether they acted within the scope of their employment is premature.

17

## POINT III

### THE INDIVIDUAL DEFENDANTS DO NOT ENJOY ABSOLUTE IMMUNITY UNDER EITHER STATE OR FEDERAL LAW

We first address defendants' claims of absolute immunity under federal law.  Immunity for the State law claims must be analyzed separately under New York law.  *See Cornejo v. Bell*, 592 F.3d 121, 130 (2d Cir. 2010).

**A.**      **The Federal Claims**

Section 1983 on its face does not recognize any defense of official immunity.  *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993).  Courts have no "license" to establish immunities to § 1983 actions for reasons of "public policy," but may only recognize common law immunities that Congress, when it enacted the statute in 1871, is deemed to have incorporated.  *Id.*  An official seeking absolute immunity "bears the burden of showing that such immunity is justified for the function in question."  *Id., quoting Burns v. Reed*, 500 U.S. 478, 486 (1991.  *See Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008) ("heavy burden").  The Supreme Court is "quite sparing" in according absolute immunity and presumes that qualified immunity will suffice.  *Burns v. Reed*, 500 U.S. at 486.

In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Court recognized absolute immunity for prosecutors for performing those quasi-judicial functions that are "intimately associated with the judicial phase of the criminal process."  *Id.* at 430.  Under the Court's functional analysis, investigative or administrative functions that non-prosecutors also perform, as opposed to core prosecutorial functions, generally are not protected by absolute immunity.  *Buckley*, at 270.  Thus, prosecutors do not have absolute immunity for fabricating evidence during a criminal investigation or defaming a suspect at a post-indictment press conference, *id.* at 275-77, swearing falsely to a certification in support of an arrest warrant, *Kalina v. Fletcher*, 522 U.S. 118 (1997), or giving legal advice to police about whether to hypnotize a suspect and execute an

18

arrest, *Burns v. Reed*, 500 U.S. at 492-96.  They also do not enjoy absolute immunity for acting beyond their colorable authority.  *See Doe v. Phillips*, 81 F.3d 1204, 1210-11 (2d Cir. 1996) (no immunity for demanding that a defendant, in violation of her first Amendment rights, swear her innocence on a bible as a condition for dropping charges).

Three additional principles are significant here.  First, "the *Imbler* approach focuses on the *conduct* for which immunity is claimed, not on the harm that the conduct may have caused..." *Buckley*, 509 U.S. at 271 (emphasis added).  Thus, in *Buckley*, the Court held that absolute immunity did not protect the pretrial investigative misconduct of a prosecutor even though some members of the Court believed that this misconduct would not be actionable because the actual infliction of injury at trial through use of such evidence was immunized.

Second, "a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards.  Even after that determination ..., a prosecutor may engage in 'police investigative work' that is entitled to only qualified immunity." *Buckley,* at 274 n.5.  *See Genzler v. Longanbach*, 410 F.3d 630, 640 (9th Cir. 2005) (timing "is relevant, but not necessarily determinative").

And third, where it is not clear from the complaint that the prosecutor performed the alleged function "in an advocacy or an investigative role, the availability of absolute immunity ... cannot be decided as a matter of law on a motion to dismiss." *Hill v. City of New York*, 45 F.3d 653, 663 (2d Cir. 1995).  Showing that the prosecutor unquestionably engaged in a prosecutorial function is the defendant's burden, failing which, "the defendant simply loses." *Buckley*, 509 U.S. at 281 (Scalia, J., concurring).  We now turn to the functions at issue in this lawsuit, working backwards chronologically.

1.    **Vecchione's False Statements In 2006**

In 2006, after Collins moved in State court to vacate his conviction, Vecchione caused the D.A.'s Office to oppose Collins' motion by lying in out-of-court interviews that no witness

19

had recanted or been coerced, and that there were no undisclosed promises or other items of *Brady* material. ¶¶ 293-97. These lies, which Vecchione repeated in an affirmation that was submitted in court, prolonged Collins's wrongful incarceration by four years. ¶¶ 298-303, 306.

A prosecutor who lies about or conceals exculpatory evidence during post-conviction proceedings does not enjoy absolute immunity unless he can meet his burden of showing his "continuing personal involvement as the states' advocate." *Yarris v. County of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006); *Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003); *Houston v. Partee*, 978 F.2d 362, 366 (7th Cir. 1992). *Warney v. Monroe County*, 587 F.3d 113 (2d Cir. 2009), upon which Vecchione relies, similarly is careful to limit post-conviction absolute immunity to "challenged actions [that] are *part of the prosecutor's role as an advocate for the state*." *Id*. at 123 (emphasis added). Here, the Complaint alleges (¶¶ 4, 234, 292-93) that Vecchione was no longer assigned to the case or representing the state, and thus he does not have absolute immunity for lying or submitting false evidence. *See Kulwicki v. Dawson*, 969 F.2d 1454, 1467 (3d Cir. 1992). This factual allegation must be presumed true for purposes of a Rule 12(b)(6) motion. *See* pp. 5, 19, *supra*. Vecchione's insistence (Defts. Mem. 7) that he was still acting as an advocate 11 years after trial merely creates an issue of fact that may not be resolved in a 12(b)(6) motion.

Vecchione argues (Mem. 7-8) that he has "witness" immunity for lying in an affirmation that was submitted to the court, but Collins's principal claim is that Vecchione lied *out of court* and thereby caused the Office to oppose Collins's meritorious motion. In any event, the Complaint alleges Vecchione deliberately prolonged Plaintiff's wrongful incarceration as a "complaining witness." ¶¶ 364, 418-19. A complaining witness does not enjoy witness immunity. *Malley v. Briggs*, 475 U.S. 335, 340-45 (1986); *White v. Frank*, 855 F.2d 956, 962 (2d Cir. 1988). This, too, is an issue of fact that may not be resolved in a 12(b)(6) motion. *Mejia v. City of New York*, 119 F. Supp.2d 232, 272 (E.D.N.Y. 2000) (Trager, D.J.).

20

2.     **The FOIL Defendants' False Statements Denying Possession Of Documents**

The FOIL defendants half-heartedly assert they are entitled to absolute immunity under *Warney.* *See* Defts. Mem. 9.   But in lying to Collins, and later to courts, in mostly sworn statements, that the Office did not possess the exculpatory documents requested by Collins under the FOIL, Cmpt., ¶¶ 244-281, and in disobeying a court order to disclose Santos's statement, ¶¶ 255-58, they were not acting in a "*prosecutor's* role as an *advocate* for the state." *Warney*, at 123 (emphasis added); *Gagan v. Norton*, 35 F.3d 1473, 1476 (10th Cir. 1994) (disobeying court order not advocative).   "[A] prosecutor acting merely as a custodian of evidence after conviction serves the same non-adversarial function as police officers, medical examiners, and other clerical state employees." *Yarris v. County of Delaware*, 465 F.3d at 138.   Every state or municipal agency is required under FOIL to have Records Access Officers to respond to requests for disclosure of documents.   *See Matter of Russo v. Nassau County Community College*, 81 N.Y.2d 690, 698 (1993), citing Public Officers Law § 86; *see* 21 N.Y.C.R.R. § 1401.2(a) (requiring records access officers).   That the employees to whom the D.A.'s Office assigned this clerical function happened to be ADAs did not make the task any more "prosecutorial."

3.     **Vecchione's Pretrial Investigative And Administrative Misconduct**

    a.     **Filing False Reports Regarding Santos and Diaz**

In causing false reports to be prepared and filed, with the NYPD, the D.A.'s Office, and the Probation Department, complaining that Collins and his family had threatened Santos and Diaz, Vecchione acted classically as a complaining witness and in an administrative capacity. *See Kalina v. Fletcher*, 522 U.S. at 130; *White v. Frank, supra*.   Vecchione has no immunity for manufacturing false allegations, *see Buckley*, even in an affidavit intended for filing in court, *see Kalina v. Fletcher*.   Here, there were no pending charges against Collins for any of the conduct that Vecchione alleged.   Vecchione's filings of false reports did not initiate any criminal proceeding and were even further removed from the judicial process than the false certification

21

the prosecutor prepared for filing in *court* in *Kalina*.

### b.  Orchestrating The Revocation Of Oliva's Work Release

Vecchione and junior prosecutors whom he directed contacted the State and arranged administratively for the Temporary Release Committee to illegally revoke Oliva's work release and to imprison him upstate.  Cmpt., ¶¶ 104-106.  In *Quartararo v. Catterson*, 917 F. Supp. 919, 955-56 (E.D.N.Y. 1996), Judge Seybert held that such illegal conduct is administrative, does not constitute "advocacy," and is not entitled to absolute immunity.  It also was outside Vecchione's colorable authority as a *prosecutor* to cause an unrelated administrative agency to illegally revoke a person's release and imprison him.  As the Supreme Court explained in *Buckley*, it was the nature of Vecchione's *function* in causing Oliva's release to be revoked, not how Vecchione ultimately exploited this impermissible tactic at Collins' trial, that dictates whether absolute immunity attaches.  *See Gregory v. City of Louisville*, 444 F.3d 725, 738-40 (6th Cir. 2006), citing *Spurlock v. Satterfield*, 167 F.3d 995, 1001-02 (6th Cir. 1999) (the use of non-testimonial actions "to pressure and coerce [a witness] into testifying falsely, ... an absolutely immunized action[,] ... does not make those underlying actions covered by absolute immunity").

### c.  Illegally Imprisoning and Physically Threatening Santos and Oliva

Vecchione caused defendants Maher and Bondor to illegally detain Santos for questioning at Vecchione's office.  As Judge Irizarry found, he then threatened Santos with *physical violence* if he did not cooperate, and arranged, in defiance of the terms of a material witness order requiring him to bring Santos forthwith to court, to illegally imprison Santos for one week in jail and one week under armed guard at a hotel.  Similarly, in *defiance* of a court order requiring Oliva's written *consent*, Vecchione took forcible custody of Oliva, over his written *objection*, and also threatened Oliva with violence.  ¶¶ 109, 115-17.

Imprisoning a person is a police or investigative function.  Thus, in *Burns v. Reed*, the Supreme Court held that when a prosecutor advises police to make an arrest, he has no more

immunity than the police who apply the advice.  Where, as here, the prosecutor and his office's detective-investigators carry out the arrest function *themselves*, they have no more immunity than the prosecutor in *Burns* who advised someone else to do it.  Moreover, Vecchione's subjective purpose in illegally imprisoning the above individuals -- to coerce them into becoming "cooperative" trial witnesses -- does not convert an intrinsically *investigative* function into an advocative one.  As *Buckley* points out, prosecutors do not automatically receive absolute immunity for investigative functions just because a prosecution already is underway.

Finally, Vecchione here plainly acted beyond any colorable authority.  Would it be quasi-judicial or "prosecutorial" to cut off a witness's arm or to beat him over the head?  Obviously not.  But it is not acceptable either to tell an individual that the prosecutor will forego doing violence to him if he will comply with the prosecutor's demands.  *See, e.g., Doe v. Phillips*, 81 F.3d at 1210 (noting that a prosecutor may not demand bribes or sexual favors).  Nor was it within Vecchione's colorable authority to *defy* explicit court orders setting the conditions under which Santos and Oliva could be detained.  As the Third Circuit has written, "We can imagine few circumstances under which we would consider the act of disobeying a court order or directive to be advocative, and we are loath to grant a prosecutor absolute immunity for such disobedience." *Odd v. Malone*, 538 F.3d at 214.

### d.   Preparing False Affidavits To Obtain Court Orders

Vecchione authorized fraudulently executed affidavits, in violation of the Oath requirement of the Fourth Amendment, *see Haywood v. City of Chicago*, 378 F.3d 714, 718-19 (7th Cir. 2004) (Posner, C.J.), and also containing false information, with which he deceived the court into issuing orders granting custody of Santos, Oliva and Diaz.  Under *Kalina v. Fletcher*, absolute immunity does *not* apply to the act of swearing to an affidavit to be used in support of an arrest warrant (although it may apply to the act of submitting it to the court).  In *Cruz v. Kauai County*, 279 F.3d 1064, 1067 (9th Cir. 2001), absolute immunity was denied to a

23

prosecutor for acting as a fact witness in swearing to the truth of allegations in support of a bail revocation motion. *Compare Betts v. Richard*, 726 F.2d 79 (2d Cir. 1984) (according absolute immunity for *submitting* such an application to the court). Vecchione's memorandum fails its burden to demonstrate any common law tradition, incorporated by Congress into § 1983, according immunity to a prosecutor who executes or authorizes a fraudulent or false affidavit for use in obtaining a material witness or other court order.[14]

## B.    The State Claims

Defendants cite *no* state law in support of their immunity arguments. New York, like federal, law follows a functional approach to absolute immunity. *See Rodrigues v. City of New York*, 193 A.D.2d 79, 86 (1st Dept. 1993). However, in New York, "absolute immunity ceases to exist when a prosecuting attorney is engaged in a role other than quasi-judicial," *Cunningham v. State*, 71 A.D.2d 181, 183 (3d Dept. 1979), or without colorable authority, *Della Pietra v. State of New York*, 71 N.Y.2d 792, 796-98 (1988). Prosecutors do not enjoy absolute immunity when they issue office subpoenas not authorized by law, *Rodrigues*, at 86-87; *Drake v. City of Rochester*, (Sup. Ct.; Monroe Co. 1978), improperly "use ∴ physical force to bring about compliance" with such a subpoena, *Drake, supra*, fail to comply with an "administrative duty"

---

[14]In *Simon v. City of New York*, 2011 WL 4940689, at *4 (E.D.N.Y. Oct. 7, 2011), Judge Vitaliano distinguishing *Kalina*, held that in New York *only* a prosecutor may swear to facts in support of a material witness application on behalf of "the people," and thus such swearing is not a function that may be performed by someone else. However, in this case, Vecchione did not merely swear to false facts; he directed others to fraudulently notarize his "signature" which had been affixed by someone else. The court was deceived into relying on "sworn" facts that in reality had not been properly sworn at all. Such applications were created and submitted outside any colorable prosecutorial authority. *Cf. Haywood v City of Chicago*, 378 F.3d 714, 718-19 (7th Cir. 2004) (false attestation invalidates warrant). Moreover, as the Ninth Circuit pointed out in *Cruz v. Kauai County*, while only a prosecutor may apply for a court order (there, a bail revocation), this "does not prevent prosecutors from supporting these motions with the sworn affidavits of other witnesses." 279 F.3d at 1067 n.4. New York's material witness statute requires an "applicant" on behalf of "the people" to swear to an application, *see* CPL § 620.30(1). Even if this "applicant" is a prosecutor, the *facts* upon which the application relies may be based on the knowledge of others, such as the detective-investigators in this case who dealt with Santos and Oliva.

24

to comply with the statutory procedure for securing an order authorizing the arrest of a witness, *Broughton v. City of New York*, 91 Misc.2d 543, 546-47 (Civ. Ct., New York Co. 1977), or direct police to unlawfully arrest and forcibly interrogate a suspect, *Claude H. v. County of Oneida*, 214 A.D.2d 964, 965 (4th Dept. 1995).

Here, for the reasons we already have discussed in the preceding section, the defendants were not functioning in a quasi-judicial capacity when they engaged in extra-judicial activities, unauthorized by law or in actual defiance of explicit court orders, to coerce witnesses and, years after Collins' conviction, they withheld or lied about the existence of *Brady* evidence that negated probable cause and revealed that Collins had been unconstitutionally convicted.

## CONCLUSION

Defendants have utterly failed to meet their burden of demonstrating that Plaintiff's claims, already credited by Judge Irizarry after receiving live testimony and considering the overwhelming documentation Plaintiff submitted, are "implausible" as a matter of law. Defendants also have failed to meet their "heavy burden" of establishing, as a matter of law, that Plaintiff's claims are barred by absolute immunity. Jabbar Collins should be permitted to pursue his right to civil discovery. If he ultimately is unable to prove his claims, defendants will have ample opportunity to move for summary judgment or to contest the issues at a jury trial.

Respectfully submitted,

JOEL B. RUDIN (JR 5645)
Law Offices of Joel B. Rudin
200 West 57th Street, Suite 900
New York, New York 10019
(212) 752-7600

Dated: New York, New York
      November 17, 2011

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **Plaintiff's Memorandum of Law Opposing Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**, was served by E-mail and Regular Mail, by mailing the same in sealed envelopes, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service, on:

Elizabeth Krasnow, Esq.                  Arthur G. Larkin
Assistant Corporation Counsel            Senior Assistant Corporation Counsel
City of New York Law Department          City of New York Law Dept.
100 Church Street                        100 Church Street
New York, New York 10007                 New York, New York 10007

_____
JOEL B. RUDIN, ESQ.

Dated:   New York, New York
         November 17, 2011