LAW OFFICES OF

# JOEL B. RUDIN

200 WEST 57TH STREET

SUITE 900

NEW YORK, NEW YORK 10019

TELEPHONE: (212) 752-7600
FACSIMILE: (212) 980-2968
E-MAIL: jbrudin@aol.com

JOEL B. RUDIN

TERRI S. ROSENBLATT

SHIRA L. FELDMAN
(Law Clerk)

JABBAR COLLINS
(Legal Analyst)

December 1, 2011

**ECF**

Honorable Frederic Block
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    Collins v. City of New York et al.
              11 CV 00766 (FB) (RML)

Dear Judge Block:

    Regarding the Defendants' motion to dismiss on the ground of prosecutorial immunity, I am writing concerning the impact on this case of *Flagler v. Trainor*, __ F.3d __, 2011 WL 5829660 (2d Cir. Nov. 21, 2011), a significant prosecutorial immunity decision that the Second Circuit handed down following Plaintiff's service upon Defendants of Plaintiff's Memorandum of Law Opposing Defendants' Motion. Defendants' lead counsel, Arthur G. Larkin, has no objection to the filing of this supplemental letter.[1] Defendants' reply memorandum is due December 5.

    In *Flagler*, the issues concerned the application of prosecutorial immunity to § 1983 claims in a post-indictment context. The Second Circuit reiterated: "Prosecutors are absolutely immune from suit *only* when *acting as advocates* and when their conduct involves the *exercise of discretion*." 2011 WL 5829660, at *3 (emphasis added). The Court then applied that principle in several contexts (under § 1983 only, not state law). Its decision supports one narrow facet of defendant Vecchione's immunity argument, but otherwise conflicts with it and support's Plaintiff's view concerning the vast majority of immunity issues in this case. A somewhat extended discussion is necessary

---

    [1] I suggested to Mr. Larkin that Plaintiff substitute a revised memorandum in light of *Flagler* but he preferred this procedure for Plaintiff to address it.

Case 1:11-cv-00766-FB-RML   Document 43   Filed 12/05/11   Page 2 of 3 PageID #: 438

LAW OFFICES OF
## Joel B. Rudin

Honorable Frederic Block
December 1, 2011
Page 2

to apply *Flagler* to the specific issues in this case.

*Flagler* holds that a prosecutor who prepares an affidavit in support of a material witness application enjoys absolute immunity for his false representations of fact because, under New York law, only a prosecutor may apply for such a warrant (distinguishing *Kalina v. Fletcher*, 522 U.S. 118 (1997)). This is the sole, narrow issue as to which *Flagler* favors Vecchione. However, Plaintiff has argued not just that Vecchione alleged false "facts" in material witness and other applications for court orders to detain witnesses, but also that he caused underlings to sign such affirmations and affidavits for him and had them fraudulently notarized, thereby deceiving the court into believing that the People's applications were supported by *sworn* allegations of fact and therefore were presumptively reliable. *See* Memorandum, pp. 23-24 & n.14. The Oath requirement is not unique to prosecutors, and it is neither a "prosecutorial" function nor an arguably proper exercise of "prosecutorial discretion" for anyone, let alone a prosecutor, to arrange for the false notarization of, or fraudulent "swearing" to, affidavits and affirmations. Thus, Vecchione should not enjoy immunity for such acts and for the damages that may be traced to them.

Vecchione's motion makes a far broader argument, essentially that he is entitled to absolute immunity for anything and everything he did that was for the purpose of advancing his prosecution of Plaintiff, including falsely imprisoning individuals in *defiance* of court orders *limiting* his discretion, *physically* threatening witnesses with bodily harm, and filing false administrative complaints alleging that Plaintiff had threatened witnesses. But *Flagler* makes clear that certain post-indictment administrative or investigatory acts, even when intended to advance the prosecution, do not enjoy absolute immunity. Thus, in connection with its material-witness holding, the Court distinguished post-indictment wrongdoing that is "administrative in nature," such as keeping the court informed about the "status of a criminal proceeding (which could affect a material witness's continued detention)," *id.* at *4 & n.11, citing *Odd v. Malone*, 538 F.3d 202, 213, 215-16 (3d Cir. 2008), or investigatory in nature, such as "making a *complaint of wrongdoing*," 2011 WL 5829660, at *4 & n.12 (emphasis added), citing *Cruz v. Kauai County*, 279 F.3d 1064, 1067-68 (9th Cir. 2002). Furthermore, the Court had "no trouble" concluding that a prosecutor is *not* absolutely immune for "accessing, or ordering someone to access," a witness's voice mail and for causing someone to record the witness's telephone calls without her consent. *Id.* at *5. Even though the prosecutor intended this behavior to assist him in preparing and presenting his case at trial, the Court held that "[t]he alleged misconduct is akin to investigatory acts, and absolute immunity does not shield such investigatory acts." *Id.*

LAW OFFICES OF
# JOEL B. RUDIN

Honorable Frederic Block
December 1, 2011
Page 3

  In Plaintiff's case, Vecchione did not merely fail to report information that the court required to determine whether to prolong a material witness's confinement that the court already had ordered, but he instead imprisoned a putative "material witness" (Santos) without taking him to court at all, as the court's order required, instead taking him directly to jail and holding him unlawfully for two weeks. This was an administrative or an investigatory, not a quasi-judicial or a discretionary, act. Furthermore, Vecchione caused the work release of another individual (Oliva) to be administratively revoked, and filed false administrative complaints against Plaintiff for allegedly threatening witnesses – all *administrative* functions under *Flagler*. Similarly, under *Flagler*, Vecchione's post-indictment conduct threatening prospective witnesses with physical harm and unlawfully taking custody of and detaining them were all quintessential (though illegitimate) *investigatory* acts.

  Finally, Plaintiff's contention that Vecchione (and the FOIL defendants) do not enjoy absolute immunity for their post-conviction behavior is entirely consistent with *Flagler*. In *Flagler*, the prosecutor refused to return a witness's cell phone following the conviction, and the Court remanded for further consideration the open question of how long absolute immunity continues to shield a prosecutor from liability for "withholding [or] preserving evidence." 2011 WL 5829660, at *5. But Plaintiff here does not seek to hold Vecchione liable merely for retaining physical evidence or for simply continuing a *Brady* violation that he had committed at trial. Plaintiff seeks to hold Vecchione liable because, when no longer assigned to the case or acting in a prosecutorial capacity, he affirmatively lied to the assigned prosecutors in his office by falsely denying that any witness had recanted or been coerced, or had received any undisclosed promises or benefits, and, as a complaining witness, executed an affidavit containing the same, affirmative falsehoods. *Flagler* provides no support for the notion that such wrongdoing as a "fact" witness is protected from civil consequence by the principle of absolute immunity.

Respectfully submitted,

Joel B. Rudin

JBR/tp

cc: Arthur G. Larkin, Esq.
   Elizabeth Krasnow, Esq.
   *Assistants Corporation Counsel*