

MICHAEL A. CARDOZO
*Corporation Counsel*

THE CITY OF NEW YORK

# LAW DEPARTMENT
100 CHURCH STREET, Rm. 3-177
NEW YORK, NY 10007

ARTHUR G. LARKIN
Senior Counsel
Phone: (212) 788-1599
Fax: (212) 788-9776
alarkin@law.nyc.gov

May 24, 2013

**BY ECF**

Hon. Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   Collins v. City of New York, et al., 11 CV 766 (FB) (RML)

Your Honor:

We write seeking a protective order in connection with plaintiff's notice of deposition directed to Kings County District Attorney Charles Hynes. We submit that plaintiff's deposition notice is premature and that the deposition should not be had, at this time. The City has offered up two witnesses with knowledge who can testify in the areas where plaintiff intends to question the District Attorney, and in such circumstances the authorities consistently hold that an elected, policymaking official should not be compelled to appear for deposition. Moreover, District Attorney Hynes is not a named defendant, and even if he were he would be entitled to absolute immunity, another factor that weighs against compelling his deposition at this time.

Factual background. In February, 2011, plaintiff Jabbar Collins brought this lawsuit against the City, two police detectives and six assistant district attorneys, alleging that these defendants violated his constitutional rights in connection with a criminal case against him during 1994-95. Collins was arrested in 1994, and prosecuted in 1995, for the brutal murder of Abraham Pollack, who was shot and killed in the lobby of a building he owned at 126 Graham Avenue, Brooklyn, New York, while collecting rent money from tenants. Collins was identified by two witnesses who knew him from their neighborhood, who told police that they saw him running from the scene of the shooting pushing an object into his waistband behind his back. These two witnesses testified in the grand jury which returned an indictment against Collins on second degree murder and related weapons charges.

Before the case was presented to the grand jury, another witness, Edwin Oliva, signed a lengty, detailed statement to the police implicating Collins in the crime. In his statement, which

was witnessed by two detectives and an ADA, Oliva reported that he overheard Collins and another man who lived in the building where the landlord was shot planning to rob the landlord at gunpoint (the crime that eventually resulted in the landlord's tragic murder). Oliva's statement included specific details that made it appear highly credible. The night he gave the statement, Oliva had been arrested for an unrelated robbery, and the case file on the robbery indicates that Oliva received some consideration in his sentencing in exchange for the statement he gave the police. He eventually testified at Collins' trial to the same facts that appear in his statement, and was cross-examined by Collins' defense counsel about the consideration he received in connection with his plea to the robbery charges and the sentence. At the criminal trial, the other two witnesses who had identified Collins to the police also testified consistent with their prior statements.

In March, 1995, Collins was convicted on all charges against him, and received a substantial sentence with a minimum of thirty-three (33) years in prison.

Oliva was a friend of Collins, and he corresponded with him while they were both in state prison. Apparently having a change of heart after Collins was convicted, Oliva told Collins in his correspondence that he thought Collins got a "raw deal." Eventually, Collins arranged to pay a lawyer, Roland Acevedo, to "represent" Oliva in connection with Oliva's signing an affidavit in which Oliva claimed that he had been "tricked" into signing the statement he gave to the police. Represented by Acevedo - who was paid thousands of dollars by Collins during 2004-6 - and in the presence of Collins' current counsel, Joel Rudin, Oliva swore that he told the police that he knew nothing about the shooting of Mr. Pollack and that he thought his two-page, single-spaced, typewritten statement said just that, viz., that he knew nothing about the crime. Oliva signed this affidavit in January, 2006, while in state prison. Oliva swore to these facts despite the level of detail in the statement and his own attorney's apparent use of the statement to obtain a more lenient sentence on the robbery charges. Collins eventually used Oliva's affidavit in support of a series of post-trial motions in the state courts, all of which were denied.

In 2008, Collins filed a habeas petition, and in May, 2010, Collins obtained an order from Hon. Dora L. Irizarry, granting a hearing on that petition. Prior to the hearing, the District Attorney's office interviewed the homicide detective who had taken Oliva's detailed statement in 1994, and learned from the detective that fifteen (15) years earlier, just before Collins' trial was scheduled to begin, Oliva suddenly decided that he did not want to testify against his neighborhood friend and purportedly "recanted" his statement implicating Collins in the crime. The District Attorney's office promptly disclosed to Judge Irizarry and Collins' habeas counsel what the detective told them. Based on the detective's recollection, it appeared that the only member of the District Attorney's office - *if anyone* - who was present when the "recantation" occurred was ADA Charles Posner, who had died by the time the habeas hearing took place. The District Attorney conceded that the "recantation" was <u>Brady</u> material that should have been, but was not, disclosed before Collins' criminal trial.

At the hearing, one of the two witnesses who had identified Collins to the police, Angel Santos, testified. He adhered to his trial testimony, expressly stating that when he identified Collins to the police, and at the criminal trial, he told the truth. Before the hearing started, Santos also told the judge that he was afraid of Collins at the time of the criminal trial in 1995, and that he continued to fear Collins even at the time of the hearing, fifteen (15) years later. He

also testified that, supposedly, ADA Michael Vecchione threatened to hit him over the head with a coffee table if he did not testify in the criminal trial, but added that he was not afraid of this supposed threat; rather, the only person he feared was Collins.  Neither Oliva nor the other witness who had identified Collins testified at the habeas hearing.  But in light of the People's concession that Oliva's "recantation" was not previously disclosed, Judge Irizarry granted the petition and the District Attorney agreed to dismiss the indictment, partially because Collins had served a substantial amount of time in prison (sixteen years) and partially because of the difficulty of re-trying the case so many years later.

Substantial evidence continues to point to Collins' guilt, despite Judge Irizarry's granting the writ.  Neither Santos nor the other witness who identified Collins, Adrian Diaz, has ever recanted their identifications or their trial testimony.  Oliva has now refined his story to help Collins in this lawsuit, by asserting that detectives not only "tricked" him into signing the statement, but also fed him the details contained in the statement and actually coerced him into signing it.  Oliva's description of these events becomes more incredible with each successive version he offers, and his claim that he was coerced is belied by his accepting benefits in connection with the robbery charges against him.  Although there remains strong evidence supporting Collins' guilt, Collins claims that he is innocent of the crime and that he was constitutionally harmed by the Kings County District Attorney's alleged "policy" of failing to discipline ADA's who violate the <u>Brady</u> disclosure rules, and his purported "ratification" of what he claims is "misconduct" by ADA Michael Vecchione, the lead attorney in the criminal trial.

In its order of February 15, 2013 (DE 91), the court allowed plaintiff's <u>Monell</u> claim to proceed to discovery.  Plaintiff has taken the depositions of several fact witnesses, including both defendant detectives, a paralegal who formerly worked in the District Attorney's office, and the junior member of the prosecution team in Collins' criminal case.  He has also taken the deposition of one Executive ADA, but chose to inquire only briefly about office policies.  Although no other executive level ADA's have been deposed yet, plaintiff has noticed the deposition of District Attorney Hynes.  We have asked plaintiff to advise what areas he intends to question the District Attorney about, so that we can designate alternative witnesses to testify in those areas first.  Counsel supplied a letter outlining these areas as follows (copy attached as <u>Exhibit A</u>):

- His "personal involvement" in the Jabbar Collins case, "including his numerous statements of support for [ADA Michael] Vecchione … and his failure to investigate misconduct allegations or findings against Mr. Vecchione."[1]

---

[1]    While plaintiff refers to "findings against" Michael Vecchione, we are aware of no such findings and in typical fashion, he cites none.  Just three days ago, two prominent criminal defense lawyers - Alan Dershowitz and Benjamin Brafman - wrote to the news outlet Pro Publica stating their strong support for Mr. Vecchione and noting that no findings of misconduct have ever been made.  In their view, ADA Vecchione "has always complied with the highest standards of prosecutorial responsibility, including the disclosure of evidence unfavorable to the prosecution and favorable to the defense."  A copy of the letter is attached as <u>Exhibit B</u>.

- His "history" of promoting ADA Vecchione despite purported "misconduct allegations" against him in various cases.

- His "explanation" for allegedly "failing … to institute any formal disciplinary process for the office" or create an employee manual telling prosecutors what their ethical obligations are.

- His purported "failure" to investigate or discipline ADA's who, plaintiff claims, were "apparently responsible" for claimed "misconduct" in some fifty (50) judicial decisions.

- His alleged "personal involvement, knowledge of misconduct or allegations of misconduct" in connection with other cases where, plaintiff claims, there is evidence of prosecutorial misconduct.

- His alleged "awareness" of various purported office practices that plaintiff claims exist.

- The general scope of his responsibilities as a "City official" including budget requests for the District Attorney's office.

In response to plaintiff's letter, we have suggested that he depose, as a starting point, two executive level ADA's - Lance Ogiste, Esq., counsel to the District Attorney, and another individual with knowledge of the District Attorney's office training and policies, ADA Kin Ng. Plaintiff has declined our proposal and insists on deposing District Attorney Hynes before deposing any other office witness about policy and practice. (A copy of the E-mail exchanges is attached as Exhibit C.)  As we set forth below, plaintiff's notice to take District Attorney Hynes' deposition should be denied at this time as premature, and plaintiff should be directed to depose the two witnesses we have offered prior to seeking any deposition of the District Attorney.

Summary of Argument.  "In general, depositions of high-ranking government officials are not permitted."  *Gonzalez v. County of Suffolk*, 09-CV-1023 (TCP) (ETB), 2011 U.S. Dist. LEXIS 130390, *3 (E.D.N.Y. Nov. 10, 2011) (collecting cases).  "The policy surrounding this privilege is to allow the function and flow of government to proceed unabated."  *Id*. (citations omitted).  In general, such depositions may only be had "upon a showing that: (1) the deposition is necessary in order to obtain relevant information that cannot be obtained from any other source and (2) the deposition would not significantly interfere with the ability of the official to perform his governmental duties."  *Id*. (citations and internal quotes omitted).  Put another way, "[d]epositions of high-ranking government officials should only be permitted if that official has unique personal knowledge that *cannot be obtained elsewhere*."  *Id*. (citations omitted; emphasis added).  "The potential burden a deposition would place on a high ranking government official must be given special scrutiny."  *Id*. (citations omitted).

In *Gonzalez*, for example, the court directed the parties to complete fact discovery and attempt to obtain information from other sources before considering whether plaintiffs could depose the Suffolk County District Attorney.  *Id*., at *3-6.  Other courts in this circuit, similarly, require plaintiffs to exhaust all other sources of information before permitting the depositions of

high-ranking policymaking officials. *E.g.*, *New York v. Oneida Indian Nation*, 95-CV-0554 (LEK) (RFT), 2001 U.S. Dist. LEXIS 21616 at *1 (N.D.N.Y Nov. 9, 2001) (denying motion to compel deposition of Governor Pataki where defendants had not established that there was no alternative source of information available to defendants); *Ebbert v. Nassau County*, 05-CV-5445 (FB) (AKT), 2007 U.S. Dist. LEXIS 15159, at *16-18 (E.D.N.Y. Mar. 2, 2007) (denying deposition of Commissioner of New York State Department of Civil Service and noting plaintiffs' "ability to depose other members of the Commissioner's staff whom NYSCS can identify as having knowledge relevant to the litigation"); *Schiller v. City of New York*, 04 Civ. 7922 (KMK) (JCF), 2006 U.S. Dist. LEXIS 67907, at *5-8 (S.D.N.Y. Sept. 20, 2006) (denying deposition of police commissioner and noting that where decisions are "a product of collaboration, and where the other members of the policy making team are deposed, the ultimate decision maker does not have unique knowledge and his deposition is therefore not warranted").

All of the foregoing decisions counsel against permitting plaintiff to depose District Attorney Hynes, at this time. First, plaintiff has not noticed the deposition of any other member of the District Attorney's staff, but seeks to depose District Attorney Hynes before deposing any other executives. Plaintiff's approach is the opposite of that which the courts endorse. Second, the City has offered up two executive level ADA's to testify about the areas in which plaintiff intends to question District Attorney Hynes, and has stipulated that the testimony of these witnesses will bind the City for purposes of plaintiff's Monell claims. Plaintiff, however, has rejected the City's offer out of hand, stating that he does not want to pay for a "useless" deposition (*see* Exhibit C). But if the City agrees to be bound by the witness' testimony with regard to discipline, policymaking and training, the proposed depositions are not useless. Rather, the depositions suffice to enable plaintiff to gather relevant evidence that he believes is necessary to prove his claims.

Most, if not all, of the areas where plaintiff wishes to question District Attorney Hynes concern knowledge that is shared among the office's executive staff. Disciplinary decisions, practices within the office and general managerial responsibilities are normally undertaken by senior staff, all of whom participate in the decision-making process and all of whom have relevant knowledge concerning that process. It would be unreasonable to assume that District Attorney Hynes has specific information concerning decisions whether to discipline trial assistants in fifty (50) or more cases that were litigated between 1978, and the present.[2] In such circumstances, the courts normally require the plaintiff to depose the other senior staff members first. *See, e.g. Gonzalez, supra*, at *3 (deposition of policymaker appropriate "only … if that official has unique personal knowledge that cannot be obtained elsewhere"); *Schiller, supra*, at *5-8 (where decisions are "a product of collaboration, and where the other members of the policy making team are deposed, the ultimate decision maker does not have unique knowledge and his deposition is therefore not warranted").

Accordingly, we request that the court enter a protective order directing plaintiff to take the depositions of Lance Ogiste, Esq., and Kin Ng, Esq., before the court addresses the question

---

[2] The earliest criminal trial at issue in the fifty (50) cases on which plaintiff relies here took place during 1978-79, and involved arson charges in connection with a supermarket fire where six firefighters died.

whether he can depose District Attorney Hynes. *See generally* Fed. R. Civ. P. 26(c).  We further submit that after those depositions are completed, the parties should be directed to confer in good faith about areas where further testimony is needed, and that if the parties are unable to agree on appropriate methods or witnesses for plaintiff to obtain that information, that the court re-visit at that time the question whether the District Attorney's deposition is necessary.

Respectfully submitted,


/s/
Arthur G. Larkin (AL 9059)
Assistants Corporation Counsel

AGL/m
Attachments
cc:      All Counsel (by ECF) (with Attachments)

# EXHIBIT A

LAW OFFICES OF

# JOEL B. RUDIN

200 WEST 57TH STREET
SUITE 900
NEW YORK, NEW YORK 10019
—
TELEPHONE: (212) 752-7600
FACSIMILE: (212) 980-2968
E-MAIL: jbrudin@aol.com

JOEL B. RUDIN
—
TERRI S. ROSENBLATT
STEVEN R. AQUINO

JABBAR COLLINS
(Legal Analyst)

May 17, 2013

**E-Mail and Regular Mail**

Arthur G. Larkin, Esq.
City of New York Law Department
100 Church Street
New York, New York 10007

Re:  *Collins v. City of New York, et al.*
     Dkt. No. 11-cv-00766 (FB)(RML)

Dear Mr Larkin:

I am writing, consistent with our discovery conference yesterday with Magistrate Judge Levy, to request additional information or disclosure with respect to certain documents that you have designated as work product privileged, to clarify our request for electronically stored information, to prioritize production of personnel records, and to provide a list of areas that we would like to question District Attorney Hynes about at his deposition.

## A.   Work Product Privilege

1.   Please explain whether the document numbered 21,040 and contained in item 14 of Defendants' privilege log, which apparently is a page of notes authored by ADA Vecchione, was reviewed by Judge Levy and indicate what privilege was asserted as to it so I can inquire of the court if necessary.

2.   Please indicate the authors of the documents produced in Defendants' May 15, 2013, production Bates Numbered NYC 0040914-15, 40916, 40932, 40935-37, 40957, 40958, 40960, 40962, 40963-67, 40968,

LAW OFFICES OF
JOEL B. RUDIN

Arthur G. Larkin, Esq.
May 17, 2013
Page 2

40971.

3.    NYC 40958 appears to be a contemporaneous record during trial
internally documenting what information the prosecution disclosed to
the defense as *Rosario* or *Giglio* material.  Yet two major sections are
redacted. Please consider disclosing this document so Plaintiff will have
the complete context and can adequately question witnesses about this
document (and so that the witnesses can accurately answer).

4.    In addition to the material that was produced to us from the privilege
log, we are concerned that a number of documents that were not
produced at all should have been.  Before we raise this issue further with
the court, we ask that you provide us with additional information about
the author(s) and contents of these documents.  I describe them here by
their item numbers from Defendants' April 9, 2013, privilege log.  They
are:

    (i)    item no. 1, request that you identify the author(s) of the
notes and the general subject matter;

    (ii)   item no. 3, please identify the author;

    (iii)  item no. 5, for the documents other than those numbered
4023-38 and 7756, which we believe were disclosed,
please identify the author(s) and general subject matter;

    (iv)   item no. 17 appears to be more than 350 pages of
contemporaneous notes from Plaintiff's 1995 trial, and
therefore may be highly relevant concerning the ADAs'
alleged design to withhold *Brady* material as to Oliva,
Santos and/or Diaz, or that false or misleading testimony
and argument was made; therefore, we ask that you make
every effort to identify the author(s) of these notes
(especially any by Charles Posner), and the general subject
matter; and

LAW OFFICES OF
JOEL B. RUDIN

Arthur G. Larkin, Esq.
May 17, 2013
Page 3

        (v)    item no. 21, we ask that you identify the author(s) of the notes, and whether they were made contemporaneously with Plaintiff's trial, or at some later point. As a general matter, we believe that any documents indicating scheduling of witness meetings, or other investigative steps taken during Mr. Collins's trial, 440, or habeas, are not privileged in any way, nor are any documents containing the out-of-court statements of the NYPD defendants or trial witnesses (not just Oliva, Santos and Diaz).

## B.   ESI Production

At the conference I corrected the narrowed dates for which we request document production: March 15, 12006 - March 31, 2007, for the list of individuals I previously sent to you, and November 25, 2009 - present for the separate list of individuals I sent you. Plaintiff's counsel remains ready to speak directly with the D.A.'s technical expert to discuss any possible ways to further reduce the time necessary to comply with our requests, including further narrowing, or at least prioritizing, them, and discussing search terms and methodology.

## C.   Prioritizing Production of Personnel Records

As discussed with the Court, Defendants will make a rolling production of personnel records. Thank you for your offer to try to follow Plaintiff's prioritization in connection with this production. We request that you initially disclose the personnel records of the prosecutors in the following cases, using the numbering from Plaintiff's Memorandum of May 5, 2013, which we previously produced to you (a copy is attached for your convenience), then produce the other materials as soon as possible:

34 (Rigby), 41 (ADA unknown), 43 (ADA Hollman), 42 (Shaban), 50 (Leeper), 49 (Mondo and Schreiber), 44 (Courtney), 45 (Kern), 1 (Cortez), 8 (Fox), 9 (ADA unknown), 11 (ADA unknown), 14 (Charnoff), 15 (Thompson), 16 (Mason), 17 (ADA unknown), 18 (Likwornik), 19 (Sachs), 20 (Rice), 24 (ADA unknown), 26

Arthur G. Larkin, Esq.
May 17, 2013
Page 4

(Slater), 27 (Bukumira), 29 (Irvin), 30 (Irvin and Fredella), 31 (Markarian), 32 (Theodorelis), 33 (Hale and Calabrese), 46 (ADA unknown), 47 (ADA unknown), 48 (Gollihue).

Please note that most of the named ADAs were provided to my office by A.C.C. Richter in the Zahrey case and we have no personal knowledge that the information is correct. We request that you verify it.

**D.     Deposition of District Attorney Hynes**

The following is a list of substantive areas of questioning we intend to engage in at Mr. Hynes's deposition. We reserve the right to expand this list, as well as to question him about matters relating to his credibility:

1.     His personal involvement, knowledge about, and reasons for his actions or inactions, in the Jabbar Collins case, with respect to the initial prosecution, the FOIL requests and litigation, the 440 motion, the federal habeas proceeding, and the allegations in the present civil Complaint, including his numerous statements of support for Mr. Vecchione to the present and his failure to investigate misconduct allegations or findings against Mr. Vecchione.

2.     His history of taking no personnel action against, but consistently promoting, Michael Vecchione, despite misconduct allegations against Mr. Vecchione in numerous cases, including, but not limited to, the prosecutions of Frank Rodriguez (*see* Complaint, ¶ 469), Steven Ruiz (¶¶ 470-72), Jeffrey Marshall (¶¶ 473-483), defendant Smith (¶ 485), Sam Lustigmann (¶ 486), defendant Rodriguez (¶ 487), Lindley DeVecchio (¶¶ 493-99), Clarence Norman (¶¶ 500), and Jabbar Collins.

3.     His explanation for failing, between 1990 and 2010, to institute any formal disciplinary process for the Office and to set forth disciplinary rules and procedures in any employee manual or other document.

4.     His failure to investigate or discipline ADAs apparently responsible for

Arthur G. Larkin, Esq.
May 17, 2013
Page 5

      misconduct in connection with 50 judicial decisions, previously disclosed to Defendants, and his explanation for these inactions.

5.      His personal involvement, knowledge of misconduct or allegations of misconduct, and ratification of or indifference to such misconduct when it was brought to his personal attention, including in the Erick Jackson, Russ, Leka, Marshall, Ranta, DeVecchio, Zahrey, and other cases.

6.      His awareness of the customs and practices of his Office to not take notes when interviewing witnesses and thereby cause *Brady* violations, to prepare and utilize falsely notarized or "sworn" documents, including applications to arrest, imprison, or take custody of witnesses, to illegally subpoena witnesses to the Office for coercive interrogation, to illegally bring material witnesses to the Office for coercive interrogation, to illegally imprison witnesses in the Office's hotel custody program, to illegally violate witnesses' right to counsel in order to facilitate coercive interrogation, and to conceal, fail to disclose, or lie about such misconduct.

7.      The scope of his responsibilities as a City official in the management and administration of his Office, including the budgetary process, the setting of priorities and policies with respect to the investigation and prosecution of criminal cases, and the hiring, training, and supervision of personnel.

I am available to discuss the above at any time.

            Very truly yours,

            Joel B. Rudin

JBR/tp
Encl.

LAW OFFICES OF
JOEL B. RUDIN

Arthur G. Larkin, Esq.
May 17, 2013
Page 6


cc:     Elizabeth Krasnow, Esq.
        *Assistant Corporation Counsel*

# EXHIBIT B

# BRAFMAN & ASSOCIATES, P.C.

### ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: BBRAFMAN@BRAFLAW.COM

BENJAMIN BRAFMAN

———

ANDREA ZELLAN

OSNAT LUPESKO-PERSKY

JOSHUA D. KIRSHNER

MARK M. BAKER
OF COUNSEL

MARC AGNIFILO
OF COUNSEL
ADMITTED IN N.Y. AND N.J.

May 21, 2013

**VIA: MAIL**

Mr. Stephen Engelberg

Editor in Chief

ProPublica

55 Broadway

New York, NY 10006

### RE: MICHAEL VECCHIONE

Dear Mr. Engelberg:

We are both experienced defense attorneys who have known Michael Vecchione in a professional capacity and have worked with him and against him over the years. In our experience, Mr. Vecchione has always complied with the highest standards of prosecutorial responsibility, including the disclosure of evidence unfavorable to the prosecution and favorable to the defense. We were shocked therefore, to read of the attacks being made on Mr. Vecchione's professional judgment and actions.

We have reviewed the documents on which the allegations against Mr. Vecchione have been based and have come to the following important conclusion: These allegations are based largely on unproved claims made in an adversarial complaint. They have not yet been subjected to the full truth testing mechanisms of a judicial proceeding. Indeed Judge Frederick Block explicitly stated in his opinion, "The facts are drawn from Collins' complaint. The court must accept them as true [for purposes of a motion to dismiss] and draw all inferences in Collins' favor." This does not mean that the allegations made in Collins' complaint are in fact true and they remain to be tested in an adversarial proceeding. The allegations should not therefore be stated as proven facts or asserted as truthful.

**BRAFMAN & ASSOCIATES, P.C.**

We take very seriously the issue of prosecutorial misconduct and support efforts to reduce it.  But allegations of prosecutorial misconduct, like claims of any other form of misconduct, must be first proved by reliable evidence and not assumed to be true based on self serving allegations. In our view, Mr. Vecchione has not been found to have committed any judicial misconduct and it would be wrong and defamatory at this time to state that he has been found to have done so.

Very Truly Yours,

Benjamin Brafman

Alan Dershowitz

# EXHIBIT C

**Larkin, Arthur (Law)**

| | |
|---|---|
| **From:** | Joel Rudin [jbrudin@aol.com] |
| **Sent:** | Thursday, May 23, 2013 5:58 PM |
| **To:** | Larkin, Arthur (Law) |
| **Cc:** | Krasnow, Elizabeth (Law); rosenblatt@rudinlaw.com |
| **Subject:** | Re: Collins v. City of NY, et al. |

We disagree.  During most if not all of the relevant period, Hynes was the policymaker. Mr. Ogiste was not even in the picture.  All discipline went through Hynes.  We do not wish to be delayed by and have to pay for a useless deposition.


-----Original Message-----
From: Larkin, Arthur (Law) (Law) <alarkin@law.nyc.gov>
To: 'Joel Rudin' <jbrudin@aol.com>
Cc: Krasnow, Elizabeth (Law) (Law) <ekrasnow@law.nyc.gov>; rosenblatt <rosenblatt@rudinlaw.com>
Sent: Thu, May 23, 2013 4:55 pm
Subject: RE: Collins v. City of NY, et al.

Of course you can - he will give testimony that will bind the office and the City in this case.  No discipline was imposed in certain cases; the witness will explain why not, if asked, and that will be our answer at trial.  He will testify in lieu of the DA and give you the information you need.  To the extent discipline was imposed, he will explain why and what the discipline was.  Again, his answers will bind the City.

The law is clear on this, I believe:  When a plaintiff seeks to depose a policymaker, the plaintiff gets subordinate officials first, and if those officials can answer the questions then the plaintiff is not entitled to take the policymaker's deposition.

If areas remain open after Mr. Ogiste is deposed, we can revisit the issue.  I would suggest that you seriously consider our proposal and agree to table the issue, for now, until after Mr. Ogiste is deposed.

Arthur G. Larkin, Esq.
Senior Counsel
NYC Law Department
100 Church St., Room 3-177
New York, New York 10007
(212) 356-2641 (tel.)
(212) 788-9776 (fax)

**From:** Joel Rudin [mailto:jbrudin@aol.com]
**Sent:** Thursday, May 23, 2013 4:47 PM
**To:** Larkin, Arthur (Law)
**Cc:** Krasnow, Elizabeth (Law); rosenblatt@rudinlaw.com; jbrudin@aol.com
**Subject:** Re: Collins v. City of NY, et al.


Maybe I am not reading the printout correctly, but it appears he became an "executive ADA" in 2006, although previously he was assigned to the "executive staff."  You still haven't answered any of my other questions.  I don't see how I can even begin to consider your position without the requested information.

-----Original Message-----
From: Larkin, Arthur (Law) (Law) <alarkin@law.nyc.gov>
To: 'Joel Rudin' <jbrudin@aol.com>
Cc: Krasnow, Elizabeth (Law) (Law) <ekrasnow@law.nyc.gov>; rosenblatt <rosenblatt@rudinlaw.com>
Sent: Thu, May 23, 2013 4:33 pm

Subject: RE: Collins v. City of NY, et al.

Attached - he has been an Executive ADA since approximately 2003, according to the printout.

---

**From:** Joel Rudin [mailto:jbrudin@aol.com]
**Sent:** Thursday, May 23, 2013 2:28 PM
**To:** Larkin, Arthur (Law)
**Cc:** Krasnow, Elizabeth (Law); rosenblatt@rudinlaw.com
**Subject:** Re: Collins v. City of NY, et al.

I'm not looking for a witness to provide hearsay about what some other person told him/her about decisionmaking regarding discipline.  I'm not asking for a 30(b)(6) witness.  Will you at least provide Mr. Ogiste's history of assignments in the office.  Was he ever assigned to "discipline" prior to 2010?  During what periods?  What was his personal responsibility, and the relevant dates, for the areas outlined in my letter?


-----Original Message-----
From: Larkin, Arthur (Law) (Law) <alarkin@law.nyc.gov>
To: 'Joel Rudin' <jbrudin@aol.com>
Cc: Krasnow, Elizabeth (Law) (Law) <ekrasnow@law.nyc.gov>; rosenblatt <rosenblatt@rudinlaw.com>
Sent: Thu, May 23, 2013 2:21 pm
Subject: RE: Collins v. City of NY, et al.

The point is that Mr. Ogiste will be in a position to testify about the office's decisions concerning discipline in all of these cases -- provided that we know, specifically, which ADA's and which cases you intend to ask him about.  This case involves more than twenty (20) years' worth of criminal prosecutions, many cases and many different ADA's.  If you intend to ask about all fifty (50) cases and/or trial assistants, we may have to break up the deposition so that our witness(es) can have adequate time to review the relevant documents and refresh their recollection(s).

Arthur G. Larkin, Esq.
Senior Counsel
NYC Law Department
100 Church St., Room 3-177
New York, New York 10007
(212) 356-2641 (tel.)
(212) 788-9776 (fax)

---

**From:** Joel Rudin [mailto:jbrudin@aol.com]
**Sent:** Thursday, May 23, 2013 2:14 PM
**To:** Larkin, Arthur (Law)
**Cc:** Krasnow, Elizabeth (Law); rosenblatt@rudinlaw.com
**Subject:** Re: Collins v. City of NY, et al.

Please explain which of the specific areas of inquiry referenced in my letter Mr. Ogiste has personal knowledge of, and what his involvement was that makes him an adequate substitute for Mr. Hynes in each of the areas.  With respect, your representation that he "can address all of the issues in [my] letter" is totally unhelpful.  Mr. Amoroso, in his previous deposition, makes no reference to him having any role whatsoever in the disciplinary process going back to 1990.  I don't know what else he has knowledge of.  That he may presently be on some committee dealing with allegations of misconduct does not resolve the issue of Mr. Hynes's knowledge and policies beginning in 1990, let alone Mr. Hynes's personal involvement in so many of the cases making up the Monell pattern as well as Mr. Collins's own case.



-----Original Message-----

From: Larkin, Arthur (Law) (Law) <alarkin@law.nyc.gov>
To: Joel B. Rudin <jbrudin@aol.com>
Cc: Krasnow, Elizabeth (Law) (Law) <ekrasnow@law.nyc.gov>
Sent: Thu, May 23, 2013 1:27 pm
Subject: Collins v. City of NY, et al.

We have reviewed your letter of May 17th concerning the areas about which you intend to question DA Hynes at any deposition.

Others in the DA's office have the information you are seeking:  Lance Ogiste, Esq., counsel to the District Attorney, and another senior Assistant, Kin Ng, Esq., can address all of the issues in your letter.  Mr. Ng is the most knowledgeable about training, and Mr. Ogiste can testify about the other areas.

Please let us know if you agree to depose these individuals before addressing the question whether DA Hynes should be deposed.  We will propose that course to MJ Levy in the motion papers that we file tomorrow.

Separately, in the event that DA Hynes is deposed in this case, would you agree to identify in advance all exhibits to be used at the deposition?  The Advisory Committee Notes to Rule 30 strongly suggest that in a case such as this one, identification of exhibits in advance will save time and is appropriate.

Arthur G. Larkin, Esq.
Senior Counsel
NYC Law Department
100 Church St., Room 3-177
New York, New York 10007
(212) 356-2641 (tel.)
(212) 788-9776 (fax)

5/24/2013