LAW OFFICES OF

# JOEL B. RUDIN

200 WEST 57TH STREET
SUITE 900
NEW YORK, NEW YORK 10019

TELEPHONE: (212) 752-7600
FACSIMILE: (212) 980-2968
E-MAIL: jbrudin@aol.com

JOEL B. RUDIN

TERRI S. ROSENBLATT
STEVEN R. AQUINO

JABBAR COLLINS
(Legal Analyst)

May 28, 2013

**ECF**

Honorable Robert M. Levy
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East, Room 1223S
Brooklyn, New York 11201

      Re:   *Collins v. City of New York, et al.*
              Dkt. No. 11-cv-00766 (FB)(RML)

Dear Judge Levy:

      I am writing in advance of this Court's May 31, 2013, deadline for the resolution of discovery issues to request that this Court issue an Order, under penalty of sanctions for non-compliance, directing the Defendants to make disclosures of several items of discovery that are central to this case. We further request, pursuant to Rule 37(c)(1)(A), that the Court sanction defendant City of New York for falsely denying, and for failing to disclose, documents concerning the involvement of Michael Vecchione in the CBS reality show "Brooklyn D.A."

      During the parties' last conference with the Court on May 16, 2013, we requested a formal order, under penalty of sanctions, as to many of these items, but Defendants avoided such an order by promising they would promptly confer with us on some issues and voluntarily comply on others. They also avoided formal orders on many of these issues following our March 21, April 17, May 3, and May 6 conferences by promising either that disclosures were forthcoming, or that they would confer with us in good faith about them. But after each conference, including the last, Defendants have refused to confer, while they have simultaneously failed to provide large swaths of document discovery and refused to

LAW OFFICES OF
# JOEL B. RUDIN

Honorable Robert M. Levy
May 28, 2013
Page 2

schedule numerous depositions.[1] At this point in the litigation, a pattern has developed: Plaintiff demands discovery, Defendants ignore it or make excessively broad objections, Plaintiff moves to compel, Defendants agree to make disclosures in lieu of a formal ruling, Defendants don't follow through, Plaintiff moves to compel again, and the whole process starts anew. Meanwhile, Defendants oppose District Attorney Hynes's deposition by contending it should come at the end of discovery. We request the Court put an end to this pattern now.

**Electronically Stored Information**

Despite having represented to us for nearly *two years* that they would disclose all relevant e-mails, Defendants made a sudden about-face less than two weeks ago, objecting to virtually all such disclosure and complaining of burdensomeness. *See* Plaintiff's Letter of May 16, 2013 (DE # 117) (setting forth the history of this issue). At our May 16 discovery conference, Defendants avoided having a formal order issued directing them to arrange a conferral with an IT specialist from the Brooklyn D.A.'s Office concerning relevant electronic search terms and protocol, by agreeing to voluntarily work with Plaintiff's counsel to resolve these issues. Defendants also agreed to make a further production of responsive e-mails and a privilege log by Tuesday, May 21. The Court stated that, absent voluntary compliance, it would issue a formal order.

On May 17, 2013, we wrote to defense counsel seeking to schedule the agreed-upon conferral (our letter is annexed as Exh. A). Defendants did *not* respond to our request for a conferral, but instead informed us that they would not be producing any e-mails until May 22. What they produced was a limited collection of e-mails from a *one-month* period at the end of Collins's underlying habeas corpus litigation, with large chronological gaps and an unspecified number of e-mails withheld on "privilege" grounds. They promised to produce a privilege log by May 24, but did not do so. As of today, they *still* have not responded to our request to confer on this issue, which we renewed by e-mail.

Meanwhile, the e-mail evidence, from the limited time period that Defendants *did* disclose, underscores how important the rest of the e-mails are to this case. For example, in

---

[1] Defendants did confer immediately after the March 21 conference, and promised to confer further after checking with their client about the numerous unresolved issues, but then did not cooperate in scheduling another conference.

LAW OFFICES OF
# JOEL B. RUDIN

Honorable Robert M. Levy
May 28, 2013
Page 3

one of the e-mails, D.A. Hynes's Chief Assistant reminds him of the role Angel Santos played in the Collins case. She tells him that Santos was the person who was "held in civil jail" for not cooperating and who claimed to have called 911, but was "not on the tape." (Hynes has consistently insisted publicly that the only wrongfully-withheld information in the case consisted of Edwin Oliva's recantation, and Hynes has taken *credit* for revealing it in 2010, when in truth Collins had submitted Oliva's affidavit claiming that he had recanted in 2006.) The e-mail evidence is obviously crucial in establishing what Hynes, and his executives, knew, and when they knew it, before ratifying Vecchione's behavior, but thus far Defendants have succeeded in withholding from Plaintiff virtually all e-mails from 2006-2010, despite our diligent efforts to obtain them. We cannot even get the City to *discuss* resolving this issue. The City appears to be doing *nothing* to gather the relevant documents, instead waiting for a conferral that never occurs and stretching out their non-compliance indefinitely in the absence of any Court order.

Accordingly, we request that this Court issue a formal Order requiring the City to comply with our electronic discovery demand, as voluntarily narrowed by Plaintiff in the undersigned's e-mail to Mr. Larkin dated May 15, 2013 (Exh. B),[2] on or before June 15, 2013, and direct that the City be sanctioned if it fails to comply. In the meantime, we continue to be available to meet with the D.A.'s IT specialist to consider ways of narrowing our request further.

**'Brooklyn D.A.' Reality Series**

Plaintiff, in his discovery demand of April 8, 2013, requested that the City provide, related to the CBS reality series, "Brooklyn D.A.," "*[a]ll documents*, including but not limited to proposals, treatments, agreements, letters of understanding, contracts, memoranda, correspondence, *e-mails*, texts, Twitter, Facebook or other social media messages, press releases, draft press releases naming or referring to Michael Vecchione or Jabbar Collins[.]" (emphasis added). Plaintiff explained that Vecchione's role as Hynes's chosen representative and as the "face" of the Office would be further evidence of Hynes's policy of condonation or ratification of his misconduct. In their response of May 13, 2013, Defendants represented that they "are not in possession, custody or control of any documents responsive to this

---

[2]We have made one correction to the e-mail: the initial time frame should be March 15, 2006, through March 31, 2007, instead of January 10, 2007.

LAW OFFICES OF
**JOEL B. RUDIN**

Honorable Robert M. Levy
May 28, 2013
Page 4

Request[.]" Recent disclosures in the unrelated litigation *George v. Hynes*, Index. No. 100730/13 (N.Y. County), have proven Defendants' representation to be false.

*George v. Hynes* is a challenge by D.A. candidate Abe George to CBS's airing of the "Brooklyn D.A." series on the ground that it is essentially campaign propaganda for Hynes. The City of New York is not a party to this case. In support of his request for a preliminary injunction, George obtained an order compelling CBS overnight to disclose from its own e-mail server certain documents concerning the production series with any members of the D.A.'s Office.

CBS then disclosed the very communications that Defendant City, in this case, had represented did not exist: a series of e-mails *to and from Michael Vecchione*, written on his *City of New York e-mail account*, showing that Vecchione himself was the key player in setting up the series and convincing Hynes to agree to it. (*See* relevant e-mails, Exh. C). These documents fall squarely under Plaintiff's discovery request. Significantly, they appear to be just a small fraction of potentially responsive documents in the D.A.'s files, as CBS held back many more e-mails, claiming journalist privilege (a claim that the City would not similarly enjoy). The e-mails from CBS cover only a two-week period in December 2012, when Vecchione was negotiating the terms of the deal, and of course CBS did not have access to, and did not disclose, Vecchione's internal correspondence with Hynes, Hynes' public relations aides, or other members of Hynes's staff. Notably, the producer also testified that she had at least one e-mail exchange with Vecchione related to the CBS series from her personal, non-CBS account in which Vecchione sent her his "bio." *See* excerpt of testimony, Exh. D.

Accordingly, we request an order directing the following: (1) payment by Defendant City of monetary sanctions for falsely denying that it possessed documents responsive to Plaintiff's discovery demand, *see* Fed. R. Civ. P. 37(c)(1); (2) ordering that all responsive documents be produced within one week of the Court's order; (3) ordering that a representative from the Brooklyn D.A.'s Office state, in a sworn affidavit, the steps taken by the Office to locate responsive documents; and (4) imposing further sanctions, including an adverse inference at trial, should the City fail to comply.

**Depositions**

Plaintiff has served non-party deposition subpoenas on two of the Brooklyn D.A.'s

LAW OFFICES OF
# Joel B. Rudin

Honorable Robert M. Levy
May 28, 2013
Page 5

Office's Detective-Investigators involved in the Collins prosecution, Stephen Bondor and Brian Maher. These subpoenas directed Maher and Bonder to appear, respectively, on May 22 and May 23, 2013. Defense counsel for the City informed us that they were representing these two individuals, and accepted service of the subpoenas on their behalf. Defense counsel also requested adjournments of both depositions, which we agreed to, as a courtesy.[3] We agreed to these adjournments based on defendants' promise to promptly reschedule them.[4] They have not done so, despite our repeated requests. We therefore request that these witnesses be produced for depositions within two weeks of the Court's ruling, or else be held in contempt of court for disobedience of a duly issued subpoena ad testificandum. Defendants also agreed to provide dates for the depositions of two FOIL ADAs, Jodi Mandel and Morgan Dennehy, but have not done that either, and should be required to.

**Privileged Documents**

The parties had a lengthy discussion during our May 16, 2013, conference concerning this Court's ruling on Plaintiff's motion to compel production of documents from Defendants' privilege log. During that discussion, Plaintiff identified a number of documents that we believed were erroneously deemed privileged and about which insufficient information had been provided. Your Honor agreed to reconsider the Court's rulings, but only after the parties conferred. In our May 17, 2013, letter to defense counsel (attached), we provided a list of questions concerning these documents. Defendants have ignored this request, as well as our subsequent e-mail reminders. Given Defendants' complete failure to respond on this issue, we request that each of the items listed in our May 17, 2013, letter, at pp. 1-3, be disclosed in full, notwithstanding any privilege objection, within one week of this Court's order.

**Document Discovery**

Finally, in advance of our May 16 conference, we requested that the Court issue an

---

[3] Bondor's deposition originally was postponed at Plaintiff's request due to Defendants' failure to disclose relevant documents, which they still have not disclosed.

[4] Indeed, defense counsel represented on May 20, that they would let us know new dates for the depositions "this week," but failed to do so. Previously, defense counsel represented on May 10 and 15, they would get back to us "soon" with deposition dates.

LAW OFFICES OF
# Joel B. Rudin

Honorable Robert M. Levy
May 28, 2013
Page 6

order, under penalty of sanctions, compelling Defendants to produce various materials they had previously agreed to provide, but had not. During the conference, Defendants again agreed to provide the documents, and agreed to do so on a rolling basis with respect to documents it could not fully provide by June 1. As May inevitably moves into June, discovery is trickling, not rolling.[5] It will never be completed without an Order. Accordingly, we request that an Order be issued directing the following:

- <u>Defendants Disclose All Personnel Files, on a Rolling Basis, by June 14</u>: While Defendants at our last conference complained that they could not produce the personnel records for the ADAs involved in all 50 of the *Monell*-related cases at issue by the date they previously had agreed to of June 1, they did agree to provide records on a rolling basis, provided Plaintiff identify those that he would like to receive first. We did this the next day, in our letter of May 17. Yet we have received no such records, while Elizabeth Krasnow, who we understand is assigned this task, is about to leave on vacation. We request an Order requiring rolling production to begin immediately and that the disclosure be completed no later than June 14, or else Defendant City be sanctioned. Again, we have been seeking this specific item of disclosure since mid-February, following Judge Block's decision – it is now more than *three months later*, and nothing has happened except delay.

- <u>Defendants to Disclose KCDAO Training Materials by June 1</u>: Defendants produced a list of training materials in discovery and committed to providing the actual materials upon Plaintiff's request. By letter dated May 13, 2013, Plaintiff requested certain of these materials, but none have been disclosed.

- <u>Defendants to Disclose D.A. Detective-Investigators' Field Log, Sign-in Log, and Vehicle Log entries from January 1-March 1, 1995 by June 1</u>: Defendants had agreed to produce these materials prior to the deposition of D.I. Stephen Bondor, which was noticed for March 22

---

[5] Defendants have made a few limited disclosures since May 16, including the small number of e-mails described above, 18 pages of training materials related to Detective Investigators, and briefs from four relevant cases after resisting this disclosure for weeks.

LAW OFFICES OF
## JOEL B. RUDIN

Honorable Robert M. Levy
May 28, 2013
Page 7

and re-scheduled for June 5, 2013, then postponed by Defendants again. Since we have no idea when the City will finally produce Bondor, or his former partner Brian Maher, we request the discovery related to the D.I.'s be disclosed without any further delay.

- **Defendants to Disclose Any ADAs Who Were Disciplined by June 1**: This request is limited to individuals whom Defendants will contend at trial or in summary judgment were disciplined in some fashion.

- **Defendants to Disclose D.I. Memo Books Related to Collins Case by June 13:** Since Defendants should produce the DI's by this date, they also should find out whether their memo books are still in existence and disclose them.

- **All Other Materials Defendants Have Agreed to Produce by June 1.**

Thank you for your Honor's consideration.

Respectfully submitted,

Joel B. Rudin

JBR/tp
Encls.

cc: All Counsel (by ECF)