# EXHIBIT B

1

                                                                    1

2        UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF NEW YORK
3        ------------------------------------------x
         ZAHER ZAHREY,
4
                                  Plaintiff,
5
                        -against-
6
         THE CITY OF NEW YORK; THE COUNTY OF KINGS,
7        HOWARD SAFIR, as Commissioner of the New
         York City Police Department; CHARLES HYNES,
8        as District Attorney, Kings County; ROBERT
         BOYCE, KELLY WIRTH, MICHAEL McWILLIAMS,
9        MICHAEL WELSOME and JOHN DOES 1-3, as members
         of the New York City Police Department and
10       individually; THERESA CORRIGAN, CHARLES GURIA,
         DENNIS HAWKINS, DOUGLAS LITTLE and JOSEPH
11       PONZI, as employees of the District Attorney's
         Office of Kings County and individually,
12
                                  Defendants.
13       ------------------------------------------x
                               200 West 57th Street
14                             New York, New York

15                             October 18, 2005
                               10:20 a.m.
16

17              EXAMINATION BEFORE TRIAL of THE CITY OF

18       NEW YORK, one of the Defendants herein, by

19       DINO G. AMOROSO, taken by the Plaintiff,

20       pursuant to Order.

21

22                ARISTA COURT REPORTING CO.
                    192 Lexington Avenue
23                       Suite 802
                   New York, New York 10016
24                     (212) 684-6100

25


              ARISTA COURT REPORTING CO.   (212) 684-6100

1

2      A P P E A R A N C E S :

3

4      JOEL B. RUDIN, ESQ.
       Attorney for Plaintiff
5           200 West 57th Street
            Suite 900
6           New York, New York  10019

7

8      MICHAEL A. CARDOZO, ESQ.
       CORPORATION COUNSEL
9           100 Church Street
            New York, New York  10007
10
       BY:  MARILYN RICHTER, ESQ.,
11          Assistant Corporation Counsel

12

13     OFFICE OF THE DISTRICT ATTORNEY
       KINGS COUNTY
14          350 Jay Street
            Brooklyn, New York  11201
15
       BY:  MARY FALDICH, ESQ.,
16          Assistant District Attorney

17

18

19

20

21

22

23

24

25

```
1                D. Amoroso
2         Bruffee memo, duty to disclose under
3         Rosario and Brady.
4               I have a list.  It does not have
5         any heading.  It is a table with course
6         titles and various information and these
7         are the CLE courses that were offered at
8         the Kings County District Attorney's
9         Office during the period of 1997 through
10        May of 2001.
11              (Ms. Richter hands documents to
12        Mr. Rudin.)
13   D I N O    G.    A M O R O S O,  a witness
14        herein, business address 350 Jay Street,
15        Brooklyn, New York 11201, after having
16        been first duly sworn by a Notary Public
17        of the State of New York, testified as
18        follows:
19   EXAMINATION BY MR. RUDIN:
20        Q       State your name for the record,
21   please.
22        A       Dino Amoroso.
23        Q       State your address for the
24   record, please.
25        A       350 Jay Street, Brooklyn, New
```

```
 1                    D. Amoroso
 2    results that would occur if we did not.
 3         Q     What was the substance of the
 4    instruction that assistant DA's received from
 5    1990 to 2000 about the consequences for
 6    failing to abide by rules of behavior?
 7         A     The consequences were always
 8    discussed in terms of admonition, punishment.
 9    Each case would be reviewed individually with
10    the understanding that we had an ever
11    omnipresent obligation to behave ethically.
12               MS. RICHTER:  Off the record.
13               (A discussion was held off the
14         record.)
15               (Whereupon, a recess was taken.)
16    CONTINUED EXAMINATION BY MR. RUDIN:
17         Q     Was there anything in writing at
18    the DA's Office during 1990 to 2000 about
19    different levels of punishment that might be
20    administered depending upon the seriousness of
21    a violation by a prosecutor of standards of
22    behavior?
23         A     No.
24         Q     Were there any written policies
25    or procedures at the DA's Office during 1990
```

92

1          D. Amoroso

2     to 2000 about how a possible violation of a

3     standard of behavior by a prosecutor would be

4     investigated or punishment determined?

5          A     Can you read that back, please.

6                (Whereupon, at this time, the

7          requested question was read by the

8          reporter.)

9          A     Not written, as I recall.

10         Q     Was there unwritten policy or

11    procedure in 1990 to 2000 about how possible

12    violations of rules of conduct for prosecutors

13    would be investigated?

14         A     Yes.

15         Q     What was that unwritten procedure

16    or policy?

17         A     It is understood that any

18    allegations concerning ethical lapses or

19    egregious conduct by a prosecutor would be

20    reviewed.

21         Q     By whom?  What was the unwritten

22    policy or procedure for the review or

23    investigation of possible violations of rules

24    of behavior by prosecutors?

25         A     If it was brought to our

1      D. Amoroso

2    attention either by defense attorney, by the
3    court, or any other person concerning behavior
4    of an assistant district attorney, a
5    discussion would be had amongst the chief
6    assistant counsel and first assistant, and
7    this would be presented to the District
8    Attorney.  This information would then be
9    discussed and acted upon as necessary.
10         Q     Do I understand you correctly
11   that there was no formal procedure for how
12   such matters would be investigated, but it was
13   done on an informal basis by the chief
14   assistant to the DA, counsel to the DA or
15   first assistant to the DA in conjunction with
16   the DA, himself?
17         A     The only objection I have is to
18   your use of the word informal.  Actually, it
19   was very formal.  A procedure would be in
20   place whereas the assistant district attorney
21   would be called in.  They would be confronted
22   with the information that we had and an
23   investigation would be untaken.
24         Q     Who would undertake the
25   investigation?

1          D. Amoroso

2      A     Sometimes it would be the chief
3  of investigations and sometimes -- excuse me.
4  The chief of investigations from the
5  Investigations Bureau, not necessarily the
6  chief investigative DI, so the assistant
7  district attorney, the bureau chief in the
8  Investigations Bureau would be one likely
9  candidate to undertake a review or
10 investigation of a matter.  Another candidate
11 would be a chief assistant or the first
12 assistant or the counsel, depending on
13 workload or what those particular folks were
14 working on and a decision would be made.
15     Q     Who would make the decision --
16     A     District Attorney Hynes.
17     Q     I have to ask a more complete
18 question.
19           Who would make the decision
20 whether or not to conduct an investigation?
21     A     District Attorney Hynes.
22     Q     Then who would make a decision
23 whether or not to take any action based on the
24 investigations?
25     A     District Attorney Hynes.

1      D. Amoroso

2      Q    In each case would the ultimate
3 decision about whether or not to proceed with
4 an investigation be made by the District
5 Attorney, Mr. Hynes?
6      A    Yes.
7      Q    During the period 1997 to 2000,
8 are you aware of any Brooklyn prosecutors who
9 were disciplined in any manner for violating
10 rules of conduct that apply to prosecutors?
11     A    Specific to cases or just in
12 general as to their conduct, whether it was in
13 the office, office-related or outside the
14 office?
15     Q    Let us start with conduct in the
16 office, in the investigation or prosecution of
17 cases?
18     A    No.
19     Q    Are you aware whether anyone who
20 was directed to be investigated by Mr. Hynes
21 during the period of '97 to 2000 for possible
22 misconduct in the investigation or prosecuting
23 of cases?
24     A    Did you say 1997 through 2000?
25     Q    1997 through 2000 for the