UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

Jabbar Collins,

                                              Plaintiff,    STIPULATION AND
                                                           ORDER OF DISMISSAL
             -against-

City of New York, *et al.*,                          11 CV 766 (FB)(RML)

                                                Defendants.

-----------------------------------------------------------------x

        WHEREAS, the parties have reached a settlement agreement and now desire to resolve the remaining issues raised in this litigation, without further proceedings and without admitting any fault or liability;

        NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, that

        1.        The above-referenced action is hereby dismissed with prejudice; and

[The rest of this page has been intentionally left blank]

2. Notwithstanding the dismissal of this action in accordance with this agreement, the District Court shall continue to maintain jurisdiction over this action for the purpose of enforcing the terms of the settlement agreement reached between the parties and set forth in the Stipulation of Settlement executed by the parties in this matter.

Law Offices of Joel B. Rudin
*Attorneys for Plaintiff*
600 Fifth Avenue, 10th Floor
New York, New York 10020

By: _____
Joel B. Rudin, Esq.
*Attorney for Plaintiff*

Dated: Brooklyn, New York
 _____, 2014

ZACHARY W. CARTER
Corporation Counsel of the
 City of New York
*Attorney for Defendants City of New York, Detective Hernandez, and Detective Gerecitano*
100 Church Street, Rm. 3-172
New York, New York 10007

By: _____
Elizabeth N. Krasnow / ARTHUR G. LARKIN
Assistant Corporation Counsel

SO ORDERED:

_____
HON. FREDERICK BLOCK
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
Jabbar Collins,

                                                    Plaintiff,     STIPULATION OF
                               -against-                                          SETTLEMENT

City of New York, et al.,                                         11 CV 766 (FB)(RML)

                                                   Defendants.

---------------------------------------------------------------- x

        WHEREAS, plaintiff commenced this action by filing a complaint on or about February 16, 2011, alleging that the defendants violated plaintiff's federal civil and state common law rights; and

        WHEREAS, defendants City of New York, Detective Jay Hernandez, and Detective Vincent Gerecitano have denied any and all liability arising out of plaintiff's allegations; and

        WHEREAS, the parties now desire to resolve the issues raised in this litigation, without further proceedings and without admitting any fault or liability; and

        WHEREAS, plaintiff has authorized his counsel to settle this matter on the terms set forth below;

        NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, as follows:

        1.     The above-referenced action is hereby dismissed against defendants, with prejudice, and without costs, expenses, or attorneys' fees except as specified in paragraph "2" below.

2. Defendant City of New York hereby agrees to pay plaintiff Jabbar Collins the sum of Ten Million ($10,000,000.00) Dollars in full satisfaction of all claims, including claims for costs, expenses and attorneys' fees. In consideration for the payment of this sum, plaintiff agrees to dismissal of all the claims against the defendants and to release the defendants City of New York, Detective Jay Hernandez, and Detective Vincent Gerecitano, and any present or former employees and agents of the City of New York or any entity represented by the Office of the Corporation Counsel, from any and all liability, claims, or rights of action alleging a violation of plaintiff's civil rights and any and all related state law claims, from the beginning of the world to the date of the General Release, including claims for costs, expenses, and attorneys' fees.

3. Plaintiff shall execute and deliver to defendant City of New York's attorney all documents necessary to effect this settlement, including, without limitation, a General Release based on the terms of paragraph 2 above and an Affidavit of Status of Liens. Prior to tendering the requisite documents to effect this settlement, Medicare-recipient plaintiffs must obtain and submit a final demand letter from Medicare for the reimbursement of any conditional payments made by Medicare for any injury or condition that is the subject of this lawsuit. A Medicare Set-Aside Trust may also be required if future anticipated medical costs are found to be necessary pursuant to 42 U.S.C. § 1395y(b) and 42 C.F.R. §§ 411.22 through 411.26.

4. Nothing contained herein shall be deemed to be an admission by the defendants that they have in any manner or way violated plaintiff's rights, or the rights of any other person or entity, as defined in the constitutions, statutes, ordinances, rules or regulations of the United States, the State of New York, or the City of New York or any other rules or regulations of any department or subdivision of the City of New York. This stipulation shall not

be admissible in, nor is it related to, any other litigation or settlement negotiations, except to enforce the terms of this agreement.

5.  Nothing contained herein shall be deemed to constitute a policy or practice of the City of New York or any agency thereof.

6.  Plaintiff agrees to hold harmless defendants City of New York, Detective Jay Hernandez, and Detective Vincent Gerecitano regarding any liens or past and/or future Medicare payments, presently known or unknown, in connection with this matter. If conditional and/or future anticipated Medicare payments have not been satisfied, defendants reserve the right to issue a multiparty settlement check naming Medicare as a payee or to issue a check to Medicare directly based upon Medicare's final demand letter.

7.  This Stipulation of Settlement contains all the terms and conditions agreed upon by the parties hereto, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Stipulation of Settlement regarding the subject matter of the instant proceeding shall be deemed to exist, or to bind the parties hereto, or to vary the terms and conditions contained herein.

Dated: New York, New York
       August 18, 2014

Law Offices of Joel B. Rudin
*Attorneys for Plaintiff*
600 Fifth Avenue, 10th Floor
New York, New York 10020

By: _____
    Joel B. Rudin, Esq.
    *Attorney for Plaintiff*

ZACHARY W. CARTER
Corporation Counsel of the
  City of New York
*Attorney for Defendants City of New York,
Detective Hernandez, and Detective
Gerecitano*
100 Church Street, Rm. 3-172
New York, New York 10007

By: _____
    Elizabeth N. Krasnow  ARTHUR G. LARKIN
    Assistant Corporation Counsel

3

SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE ("Settlement Agreement") is entered on September 16, 2014, by and between:

Plaintiff:          JABBAR COLLINS

Defendants:    THE CITY OF NEW YORK, and VINCENT GERECITANO and
JOSE R. HERNANDEZ, Individually and as Members of the New York City Police Department

Recitals

A. On or about February 16, 2011, Plaintiff filed a Complaint against the Defendants in the Eastern District of New York, Federal Court, Court Action No. 11CV-00766 (the "Complaint"), which Complaint arose out of certain alleged negligent acts or omissions by the Defendants. In the Complaint, the Plaintiff sought to recover monetary damages as a result of that certain occurrence on or about March 1994 through June 9, 2010, inside the City of New York which resulted in alleged personal physical injuries.

B. The Parties desire to enter into this Settlement Agreement in order to provide for certain payments in full settlement and discharge of all claims which are or might have been the subject matter of the Complaint, upon the terms and conditions set forth herein.

Agreement

The parties agree as follows:

1. Release and Discharge

In consideration of the payments called for herein, the Plaintiff completely releases and forever discharges the Defendants, and said Parties' past, present and future officers, directors, stockholders, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, insurers, predecessors and successors in interest, and assigns and all other persons, firms or corporations with whom any of the former have been, are now or may hereafter be affiliated, of and from any and all past, present or future claims, demands, obligations, actions, causes of action, wrongful death claims, rights, damages, costs, losses of services, expenses

1

and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery, and whether for compensatory or punitive damages, which the Plaintiff now has, or which may hereafter accrue or otherwise be acquired, on account of, or in any way growing out of, or which are the subject of the incident alleged or the subject matter of the Complaint (and all related pleadings), including, without limitation, any and all known or unknown claims for bodily and personal injuries to the Plaintiff, or any future wrongful death claim of Plaintiff's representative, which have resulted or may result from the alleged acts or omissions of the Defendants. This Release, on the part of the Plaintiff, shall be a fully binding and complete settlement among the Plaintiff, the Defendants and their assigns and successors, save only the executory provisions of the Settlement Agreement. The Plaintiff agrees to defend, indemnify and hold the Defendants harmless from and against all such claims, demands, obligations, actions, causes of action, damages, costs and expenses.

2. Payments

In consideration of the Release set forth above, The City of New York on behalf of the Defendants hereby agrees to pay the total sum of $10,000,000.00 in cash and future periodic payments in the following manner:

Up Front Monies -- $8,500,000.00

Future Periodic Payments funded at a cost of $1,500,000.00 as follows:

Each attorney and the law firm hereby waives and disclaims any and all ownership interest or liens that they may have in the settlement proceeds by reason of any applicable state statute, common law decision or ruling. By their signature, the Plaintiff and each attorney and the law firm, acknowledge that the attorney fee benefit payments are being made at the direction of the Plaintiff and for the convenience of the Plaintiff.

Attorney Fee for Joel B. Rudin ("Payee"):

Guaranteed payments continuing for five (5) years only, providing $305,000.00 per year, level income, with the first payment beginning on 01/05/2016. The last guaranteed payment will be made on 01/05/2020.

The claimant solely for his convenience directs the above payment stream to be paid to Joel B. Rudin, Esquire. Claimant consents to the above-mentioned portion of the settlement obligation assigned to the assignment company, MetLife Tower Resources Group, Inc. The assignment company will purchase a Met Life annuity to fund this obligation in an assignment intended to meet Section 130 of the IRC.

It is understood that if the structured settlement is not funded by November 4, 2014, the above payment beginning date may be deferred the number of days needed to maintain the agreed to benefit amount.

All sums set forth herein constitute damages on account of personal physical injuries or sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code and physical injuries or physical sickness within the meaning of Section 130(c) of the Internal Revenue Code.

3. <u>Plaintiff's Rights to Payments</u>

Said payments to Plaintiff required herein are fixed and determined as to amount and time of payment and cannot be accelerated, deferred, increased or decreased by the Plaintiff or any Payee, nor shall the Plaintiff or any Payee have the right, power or authority to sell, mortgage or hypothecate or encumber same, or any part thereof, nor anticipate the same or any part thereof, by assignment, contract, agreement, pledge or other device.

4. <u>Qualified Assignment</u>

The Parties hereto acknowledge and agree that The City of New York on behalf of the Defendants will make a "qualified assignment" within the meaning of Section 130(c) of the Internal Revenue Code of 1986 as amended, of the Defendants' liability to make the periodic payments required herein. Such assignment is accepted hereby irrevocably by the Plaintiff and shall completely release and discharge the Defendants from such obligations hereunder as are assigned to **METLIFE TOWER RESOURCES GROUP, INC.**, "Assignee". The Plaintiff recognizes that, in the event of such an assignment, the Assignee shall be the sole obligor with respect to the obligations assigned, and that all other releases that pertain to the liability of the Defendants shall thereupon become final, irrevocable and absolute.

If the liability to make the periodic payments is assigned by way of a "qualified assignment":

    a.    The periodic payments from the Assignee cannot be accelerated, deferred, increased or decreased by the Plaintiff or any Payee; and

    b.    The Assignee's obligation for payment of the periodic payments is no greater than the obligation of the person originally liable (whether by suit or agreement) for payments and from whom the obligation was assigned.

3

METROPOLITAN LIFE INSURANCE COMPANY will guarantee the obligations assumed by the Assignee, METLIFE TOWER RESOURCES GROUP, INC.

5. Right to Purchase an Annuity

The Assignee reserves the right to fund its liability to make periodic payments through the purchase of an annuity policy from **METROPOLITAN LIFE INSURANCE COMPANY**, "Annuity Issuer". The Assignee shall be the owner of the annuity policy and shall have all rights of ownership. The Assignee may have the Annuity Issuer mail payments directly to the Payee. The Payee and/or his legal representatives shall be responsible for maintaining the currency of the proper mailing address and mortality information to Assignee.

6. Stipulation Regarding Settlement Obligations

It is hereby stipulated and agreed by and between the parties that the rights, responsibilities and obligations of Defendants are totally extinguished and satisfied upon payment of the sums necessary for the purchase of the annuity together with an immediate payment, attorney fees and disbursements as shown herein.

It is further understood that the Defendants are not guarantors or insurers with respect to the aforementioned annuity. The purpose of this stipulation is to make clear that the obligations and responsibilities of the Defendants are satisfied upon issuance of the aforementioned settlement monies.

7. Attorney's Fees

Each party hereto shall bear all attorney's fees and costs arising from the actions of its own counsel in connection with the Complaint, this Settlement Agreement and the matters and documents referred to herein, the filing of a Stipulation of Discontinuance of the Complaint, and all related matters.

8. Payee's Beneficiary

Any payments to be made after the death of the Payee in accordance with the terms of this Settlement Agreement shall be made to the beneficiary designated herein or to such beneficiary as may be requested in

4

writing by the Payee to the Assignee. If no beneficiary is designated herein or requested by the Payee, the payments shall be made to the estate of the Payee. No request made under this section nor any revocation thereof shall be effective unless it is in writing and delivered to the Assignee. The designation must be in a form acceptable to the Assignee before such payments are made, but in no event shall the request of the Payee be unreasonably withheld or denied.

9. Discharge of Obligation

The obligation assumed by the Assignee to make each Periodic Payment shall be fully discharged upon the mailing of a valid check or electronic funds transfer in the amount of such payment on or before the due date to the last address or account on record for the Payee or beneficiary with the Annuity Issuer. If the Payee or beneficiary notifies the Assignee that any check or electronic funds transfer was not received, the Assignee shall direct the Annuity Issuer to initiate a stop payment action and, upon confirmation that such check was not previously negotiated or electronic funds transfer deposited, shall have the Annuity Issuer process a replacement payment.

10. General Release

The Plaintiff hereby acknowledges and agrees that the Release set forth in paragraph 1 hereof is a general release, and he further expressly waives and assumes the risk of any and all claims for damages which exist as of this date but of which the Plaintiff does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect Plaintiff's decision to enter into this Settlement Agreement. The Plaintiff further agrees that he has accepted payment of the sums specified herein as a complete compromise of matters involving disputed issues of law and fact, and he assumes the risk that the facts or laws may be otherwise than he believes. It is understood and agreed by the Parties that this settlement is a compromise of a doubtful and disputed claim, and the payments are not to be construed as an admission of liability on the part of the Defendants, by whom liability is expressly denied.

11. Liens

Any liens and statutory claims to reimbursement, current or future, against the proceeds of this settlement, are to be satisfied by the Plaintiff, including, but not limited to, any Medicaid Liens, Medicare conditional payments, Worker's Compensation liens, Social Security liens, hospital, physician or attorney liens, or any of the statutory, common law or judgment liens. The Plaintiff, therefore, agrees to indemnify and hold the Defendants harmless against any present or future claims made against the Defendants by such lienholders or statutory claimholders as a result of payment of this settlement by the Defendants should there be additional existing liens or statutory claims against the proceeds of this settlement.

Plaintiff agrees that prior to tendering the requisite documents for payment, as provided in CPLR 5003-a(b), that any Medicare-recipient plaintiff shall have notified Medicare and obtained and submitted with the closing papers a final demand letter for conditional payments. A Medicare Set-Aside Trust may also be required if future anticipated medical costs are found to be necessary pursuant to 42 U.S.C. §1395y(b) and 42 C.F.R. §§411.22 through 411.26.

Plaintiff agrees to hold harmless Defendants, The City of New York, and Vincent Gerecitano and Jose R. Hernandez, Individually and as Members of the New York City Police Department, and any other current or former employee of the City of New York, regarding any liens, claims or past and/or future Medicare payments, presently known or unknown in connection with this matter. If conditional and/or future anticipated Medicare payments have not been satisfied, Defendants reserve the right to issue a multi-party settlement check, naming Medicare as a payee or to issue a check to Medicare directly based on Medicare's final letter. Upon tender of all required settlement papers, payment of the settlement shall be made in accordance with CPLR 5003-a(b). Plaintiff is required to obtain a release/discharge of any attorney's lien asserted against the proceeds.

12. Delivery of Stipulation of Discontinuance with Prejudice

Concurrently with the execution of this Settlement Agreement, counsel for the Plaintiff shall deliver to counsel for the Defendants, an executed Stipulation of Discontinuance with Prejudice of the Complaint described in recital A above. The Plaintiff has authorized Plaintiff's attorneys to execute this Stipulation on his

behalf and hereby authorizes counsel for the Defendants to file said Stipulation with the court and enter it as a matter of record.

### 13. Warranty of Capacity to Execute Agreement

The Plaintiff represents and warrants that no other person or entity has or has had any interest in the claims, demands, obligations, or causes of action referred to in this Settlement Agreement except as otherwise set forth herein and that he has the sole right and exclusive authority to execute this Settlement Agreement and receive the sums specified in it and that he has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations, or causes of action referred to in this Settlement Agreement.

### 14. Entire Agreement and Successors in Interest

This Settlement Agreement contains the entire agreement between the Plaintiff and the Defendants with regard to the matters set forth herein and shall be binding upon and enure to the benefit of the executors, administrators, personal representatives, heirs, successors and assigns of each.

### 15. Representation of Comprehension of Document

In entering into this Settlement Agreement the Plaintiff represents that he has relied upon the legal and tax advice of his attorneys, who are the attorneys of his own choice, and the terms of this Settlement Agreement have been completely read and explained to him by his attorneys, and that those terms are fully understood and voluntarily accepted by him.

### 16. Governing Law

This Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of the United States of America.

17. Additional Documents

All Parties agree to cooperate fully and execute any and all supplementary documents and take all additional actions which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Settlement Agreement.

18. Effectiveness

This Settlement Agreement shall become effective following execution by all of the Parties.

Executed at ___New York, NY___, this ___16th___ day of ___September___, 2014.

_____
JABBAR COLLINS (Plaintiff)

_____
JOEL B. RUDIN, ESQUIRE (Plaintiff's Attorney)

THE CITY OF NEW YORK (on behalf of Defendants)

BY: _____
(Name)

ITS: ___Chief, Special Federal Litigation___
(Title)

8

# Qualified Assignment and Release Agreement
## In Accordance With Internal Revenue Code Section 130

"Claimant(s)": JABBAR COLLINS

"Assignor": THE CITY OF NEW YORK

"Settlement Agreement": SETTLEMENT AGREEMENT AND RELEASE -
[Date and title of settlement agreement, order or other document embodying the Assignor's obligation to make the agreed periodic payments]

"Assignee": METLIFE TOWER RESOURCES GROUP, INC.

"Annuity Issuer": METROPOLITAN LIFE INSURANCE COMPANY

"Effective Date": _____

This Qualified Assignment and Release Agreement is made and entered into as of the Effective Date by and among the undersigned parties with reference to the following facts:

A   Claimant(s) and Assignor are parties to or are otherwise subject to or entitled to receive payments under the above-referenced Settlement Agreement, under which Assignor has liability to make certain periodic payments to or for the benefit of Claimant(s) as specified or referred to in paragraph 12 of this Agreement (the "Periodic Payments"); and

B   Assignor and Assignee wish to effect a "qualified assignment" within the meaning and subject to the conditions of Section 130(c) of the Internal Revenue Code of 1986, as amended (the "Code").

Now, therefore, in consideration of the foregoing and for other good and valuable consideration, the parties agree as follows:

1. **Assignment and Assumption; Release of Assignor.** Assignor hereby assigns to Assignee, and Assignee hereby accepts and assumes, all of Assignor's liability to make the Periodic Payments described in Addendum No 1-----. Each Claimant hereby accepts and consents to such assignment by Assignor and assumption by Assignee. Effective on the Effective Date, each Claimant hereby releases and discharges Assignor from all liability to make the Periodic Payments.

2. **Nature of Periodic Payments.** The Periodic Payments constitute

    i.   damages (other than punitive damages), whether by suit or agreement, or

    ii.  compensation under a workers' compensation act,

   on account of personal injury or sickness in a case involving physical injury or physical sickness, within the meaning of Sections 130(c) and 104(a) of the Code.

3. **Extent of Assignee's Liability.** Assignee's liability to make the Periodic Payments shall be no greater than the liability of Assignor immediately prior to the Effective Date. Assignee assumes no liability other than the liability to make the Periodic Payments described in Addendum No. 1.-----. Assignee's liability to make the Periodic Payments shall be unaffected by any bankruptcy or insolvency of Assignor.

4. **Qualified Funding Asset.** Assignee will fund the Periodic Payments by purchasing from Annuity Issuer a "qualified funding asset," as defined in Section 130(d) of the Code, in the form of an annuity contract (the "Annuity") issued by Annuity Issuer and providing for payments corresponding to the Periodic Payments. Assignee shall be designated as the owner of the Annuity. All rights of legal ownership and control of the Annuity shall (subject to paragraph 9 of this Agreement) be and remain vested exclusively in Assignee; provided, however, that the Annuity shall be used by Assignee to fund the Periodic Payments and shall at all times be designated by Assignee on its records as being taken into account, under Section 130 of the Code, with respect to this Agreement. Notwithstanding anything to the contrary contained in this Agreement, neither any Claimant nor any Successor Payee shall have any rights with respect to the Annuity or the payments thereunder that would cause any amount attributable to the Annuity to be currently includible in the recipient's income or would otherwise affect the determination of when any recipient is treated as having received any payment for income tax purposes, or would otherwise prevent this Agreement from satisfying all of the conditions for a "qualified assignment" within the meaning of Section 130(c) of the Code.

5. **Delivery of Payments.** Assignee may have Annuity Issuer send payments directly to a Claimant, or, if applicable, to a Successor Payee (as defined in paragraph 8 of this Agreement), or deliver payments by electronic funds transfer to a depository institution in the United States for credit (directly or indirectly) to an insured account in the name of such Claimant or Successor Payee. Such direction of payments under the Annuity shall not be deemed to afford the Claimant or any Successor Payee any rights of ownership or control of the Annuity. Each Claimant and any Successor Payee shall at all times keep Annuity Issuer apprised of such Claimant's or Successor Payee's current street address and telephone number and, if such Claimant or Successor Payee receives payments by electronic funds transfer, the name, address, bank identifier number (BIN) and telephone number of the applicable depository institution and the account number of the account to which the payments are to be credited.

6. **Discharge of Liability.** The Assignee's liability to make each Periodic Payment to the Claimant or Successor Payee designated to receive such payment shall be discharged automatically at such time as a corresponding payment is made to such Claimant or Successor Payee by the Annuity Issuer.

7. **Acceleration, Transfer of Payment Rights.** None of the Periodic Payments and no rights to or interest in any of the Periodic Payments (all of the foregoing being hereinafter collectively referred to as "Payment Rights") can be

    i. Accelerated, deferred, increased or decreased by any recipient of any of the Periodic Payments; or

    ii. Sold, assigned, pledged, hypothecated or otherwise transferred or encumbered, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance (any such transaction being hereinafter referred to as a "Transfer") has been approved in advance in a "Qualified Order" as defined in Section 5891(b)(2) of the Code (a "Qualified Order") and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.

No Claimant or Successor Payee shall have the power to effect any Transfer of Payment Rights except as provided in sub-paragraph (ii) above, and any other purported Transfer of Payment Rights shall be wholly void. If Payment Rights under this Agreement become the subject of a Transfer approved in accordance with sub-paragraph (ii) above the rights of any direct or indirect transferee of

such Transfer shall be subject to the terms of this Agreement and any defense or claim in recoupment arising hereunder.

8. **Contingent Beneficiaries.** Any Periodic Payments to be made after the death of any Claimant or Successor Payee shall be made to such party as shall have been designated in, or in accordance with, the Settlement Agreement or, if the Settlement Agreement does not provide for such designation, then to the party designated in conformity with this paragraph 8. Any party so designated is referred to in this Agreement as a "Contingent Beneficiary." If no Contingent Beneficiary is living at the time of the death of a Claimant or Successor Payee, payment shall be made to the decedent's estate. As used in this agreement the term "Successor Payee" refers to a Contingent Beneficiary or an estate that has become entitled to receive Periodic Payments following the death of a Claimant or a Successor Payee. Except as otherwise provided in the Settlement Agreement, no designation or change of designation of a Contingent Beneficiary shall be effective unless such change (i) is requested in a written request submitted to Assignee (or its authorized agent) in accordance with Assignee's customary procedures for processing such requests; and (ii) is confirmed by Assignee (or its authorized agent). Except for a designation that is expressly identified in the Settlement Agreement as irrevocable, any designation of a Contingent Beneficiary shall be deemed to be revocable; and no party that is designated as a Contingent Beneficiary (other than a party irrevocably designated as a Contingent Beneficiary in the Settlement Agreement) shall, solely by virtue of its designation as a Contingent Beneficiary, be deemed to have any cognizable interest in any Periodic Payments.

9. **Failure to Satisfy Section 130(c).** If at any time prior to completion of the Periodic Payments, the Settlement Agreement is declared terminated in a final, non-appealable order of a court of competent jurisdiction (or in the case of a workers' compensation settlement, a final order of the applicable workers' compensation authority) or if it is determined in any such final order that the requirements of Section 130(c) of the Code have not been satisfied in connection with this Agreement: (i) the assignment by Assignor to Assignee of the liability to make the Periodic Payments, Assignee's acceptance of such assignment and the release by Claimant(s) of Assignor's liability shall be of no force or effect; (ii) Assignee shall be conclusively deemed to be acting as the agent of Assignor; (iii) the Annuity shall be owned by Assignor, which shall retain the liability to make the Periodic Payments; (iv) Assignee shall have no liability to make any Periodic Payments; and (v) the parties hereto agree to cooperate in taking such actions as may be necessary or appropriate to implement the foregoing.

10. **Governing Law; Disclosure of Certain Tax Information; Binding Effect.**

    (i) This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of New York provided, however, that any Transfer of Payment Rights under this Agreement may be subject to the laws of other states in addition to the state designated above.

    (ii) This Agreement shall be binding upon the parties hereto and their respective successors, heirs, executors, administrators and permitted assigns, including without limitation any party asserting an interest in Payment Rights.

11. **Advice, Comprehension of Agreement.** In entering into this Agreement, each Claimant represents and warrants that (i) such Claimant has relied solely upon the legal and tax advice of such Claimant's own attorneys and other advisors, who are the attorneys and advisors of such Claimant's choice, concerning the legal and income tax consequences of this Agreement; and (ii) the terms of this Agreement have been completely read by and explained to such Claimant and are fully understood and voluntarily accepted by such Claimant.

3

12. **Description of Periodic Payments.** The Periodic Payments are as set forth immediately below or (if not set forth below) as set forth in attached **Addendum No. 1**, which is hereby incorporated in and made a part of this Agreement.

Description of Periodic Payments:

See Addendum No. 1

This Qualified Assignment and Release Agreement is signed in one or more counterparts as of the Effective Date by the following:

Assignor: The City of New York

By: _____
Authorized Representative

Title: Chief, Spend Federal Litigation

Assignee: MetLife Tower Resources Group, Inc.

By: _____
Authorized Representative

Title: _____

Claimant(s): Jabbar Collins

Approved as to Form and Content:

Joel B. Rudin, Esquire
Claimant's Attorney

_____
Claimant's Attorney

4

# Addendum No. 1
## Description of Periodic Payments

Each attorney and the law firm hereby waives and disclaims any and all ownership interest or liens that they may have in the settlement proceeds by reason of any applicable state statute, common law decision or ruling. By their signature, the Plaintiff and each attorney and the law firm, acknowledge that the attorney fee benefit payments are being made at the direction of the Plaintiff and attorney acknowledge that the attorney fee benefit payments are being made at the direction of the Plaintiff and for the convenience of the Plaintiff.

Payee: Joel B. Rudin

Guaranteed payments continuing for five (5) years only, providing $305,000.00 per year, level income, with the first payment beginning on 01/05/2016. The last guaranteed payment will be made on 01/05/2020.

The claimant solely for his convenience directs the above payment stream to be paid to Joel B. Rudin, Esquire. Claimant consents to the above-mentioned portion of the settlement obligation assigned to the assignment company, MetLife Tower Resources Group, Inc. The assignment company will purchase a Met Life annuity to fund this obligation in an assignment intended to meet Section 130 of the IRC.

Initials

Assignor: _____

Assignee: _____

Claimant(s): _____

Claimant-Attorney: _____